GEORGE BINGHAM, PLAINTIFF-APPELLANT, v. HARWOOD E. O. FISH, DEFENDANT-RESPONDENT.

Argued March 11, 1914—Decided June 15, 1914.

1. In an action for deceit brought by plaintiff against the defendant for fraudulently inducing the plaintiff to buy stock in a company of which the defendant was president, such inducement being by a prospectus and oral statements of its output, an offer by the plaintiff to prove the falsity of the statements in such prospectus should have been granted, and the same passed upon by the jury, and it was error for the trial court to grant a nonsuit in the face of such offer.

2. It is an essential element of an action for deceit that there be moral fraud in the misrepresentations.
3. If the representations be false, to the defendant's knowledge, and made with intent to deceive, the fraudulent intent is conclusive, irrespective of the fact whether or not the defendant would profit by his act.

On appeal from the Supreme Court.

For the appellant, *M. Casewell Heine* and *Malcolm G. Buchanan*.

For the respondent, *Codding & Oliver*.

The opinion of the court was delivered by

KALISCH, J. During the progress of the trial of this case, which was an action for deceit brought by the plaintiff against the defendant, for fraudulently inducing the plaintiff to buy stock of the Gem Dredging Company, the trial judge interrupted the trial and inquired of the plaintiff's counsel if they had any further testimony to offer as to representations made by the defendant at the time the stock was offered for sale, and upon being informed that they had not, he directed a nonsuit upon the ground that the plaintiff had failed to establish that the defendant had made any representations upon which the plaintiff relied as to the value of the stock. It is the propriety of granting this judgment of nonsuit which is here for review, upon this appeal.

The representation relied on by the plaintiff was a statement made by the defendant of the assets and liabilities of the Gem Dredging Company. The plaintiff testified that before he had made up his mind to purchase the stock the defendant handed him a prospectus and pointed out to him, the plaintiff, the statement of assets and liabilities.

The statement showed that the assets, including treasury stock of $454,367 unsold, amounted to $1,042,073.52 against which was the liability of capital stock full paid and non-assessable (par value) $1,000,000. Immediately following

this, the statement reads: "The company has no other obligations, debts or liabilities of any kind whatsoever."

The defendant was the president and manager of the Gem Dredging Company. A Mr. Medlin who lived in Hamilton, Ontario, and who was a stock broker had some stock of the Gem Dredging Company for sale. Medlin approached the plaintiff for the purpose of selling him some of the stock, without success. The defendant came to Hamilton some time in the latter part of January, 1911, and called upon a Dr. Bates, not for the purpose of selling him stock, but to have his assistance in selling stock to others. Bates telephoned the plaintiff to come over to his house which he did and there found the defendant and Medlin, the broker. The plaintiff testifies that at that conversation the plaintiff had a number of photographs of the property of the company and some literature which contained a written report of the productiveness of the properties in diamonds, &c., and the defendant also showed him some diamonds and gold dust which he said came from the properties; he also said the machinery part of it was bought and was to be shipped immediately and to be here in June and that as soon as the machinery was in operation, the diamonds would almost flow along and dividends would be payable in October. Plaintiff also said that he took a prospectus, given him by the defendant, home and looked it over. Plaintiff was asked if after receiving the prospectus he had any conversation with the defendant and his answer was that the conversation was general regarding the properties and about the probabilities. The plaintiff also testified that he did not remember whether the defendant asked him outright to take the stock or not. It appears from the testimony that after the conversation had with the defendant that the plaintiff purchased stock of Medlin, the broker.

We think, from the testimony, the jury would have had a right to infer that the defendant had put this stock in the hands of a stock broker for sale and that the defendant made these representations for the purpose of inducing the plaintiff to buy stock. When the plaintiff offered to prove the

statements contained in the prospectus concerning the assets of the company were not true, the trial judge excluded such evidence, halted the trial and directed a nonsuit upon the ground that no proof had been made of any representations. This was error. From the discussion which ensued between the trial judge and counsel of appellant, it is apparent that the trial judge misapplied the doctrine laid down in *Cowley* v. *Smyth,* 46 *N. J. L.* 380. In that case a director of a savings bank against whom an action for deceit was brought for representing that the bank was solvent when it was insolvent, and that the bank could not be insolvent without his knowledge, as he was one of the finance committee, there being no evidence that the defendant in fact knew the embarrassed condition of the bank, the court very properly held, that a nonsuit would have been improper but that an instruction to the jury that if the defendant asserted the fact as to the condition of the bank as of his own positive knowledge and did not in fact know what its condition was, then the plaintiff acting upon that, and being injured, would be entitled to recover, was erroneous, and it should have been left to the jury to say whether upon the evidence, the defendant made the representations with a fraudulent purpose to deceive or whether he made them in good faith and in the honest belief that they were true. It is firmly settled that an essential element of an action for deceit is moral fraud. The late Chief Justice Depue, who wrote the learned opinion in *Cowley* v. *Smyth, supra* (on *p.* 390), quotes with approval the legal rule stated by Chief Justice Shaw in *Page* v. *Bent,* 2 *Metc.* 374, as follows: "The principle is well settled that if a person make a representation of a fact, as of his own knowledge, in relation to a subject-matter susceptible of knowledge, and such representation is not true, if the party to whom it is made relies and acts upon it, as true and sustains damage by it, it is a fraud and deceit for which the party making it is responsible."

Now, in the case before us, there can be no doubt that the defendant, as president and manager of the Gem Dredging

Company, was in a position to know the financial condition of that concern. The assets and liabilities, of the concern were matters susceptible of knowledge. He was in Hamilton for the purpose of selling this stock. From what the defendant said to the plaintiff regarding the assets and liabilities of the company and its productive quality, a jury might legitimately infer that they were intended by the plaintiff as a representation of the financial standing of the company and as an inducement to the plaintiff to purchase stock in the company and that the plaintiff relying on such representation bought from the stock broker.

It is also clear that if the plaintiff had been permitted to show that the Gem Dredging Company had no such assets as the prospectuses set out and particularly referred to by the defendant in his conversation with the plaintiff, a jury would have been warranted in finding that the plaintiff was induced to buy the stock because of fraudulent representations as to the financial condition of the company made by the defendant, and that the representations were made by the defendant with intent to deceive. Although it does not appear that the stock which the broker sold was the stock of the defendant, that circumstance is immaterial since it is unnecessary that the party making the representation should have any interest of his own to subserve by it. As Chief Justice Shaw, in *Page et al.* v. *Bent, supra,* 374, concretely expresses it, "the act is wrong and injurious and the conclusion of law is that it was done *malo animo."*

But there was evidence which tended to establish that the defendant was engaged in promoting this company and that he was in Hamilton for the purpose of inducing people to purchase stock therein, and that he wanted Dr. Bates to help him to sell to people there, all of which was for the consideration of the jury as to the interest the defendant had in the disposition of the stock and in making the representations complained of.

For the reasons given the judgment of nonsuit will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.   10.