OLSON and another, Respondents, vs. SKROCH, Appellant.

*December 13, 1923—January 15, 1924.*

*Exchange of property: Belief of one party that he was receiving Liberty bonds: Failure of other party to state facts: Fraud: Rescission: Pleading: Demurrer ore tenus.*

1. One of the members of the plaintiff partnership arranged to sell a tractor for cash and bonds, under the impression that he was to receive Liberty Bonds. The buyer at no time made any false or fraudulent representation with respect to the bonds, nor did he represent them to be Liberty Bonds, but he

knew the plaintiff had in mind he was to receive Liberty Bonds. *Held*, that a situation was presented where honesty and fair dealing required the defendant to speak the truth, and his failure to do so constituted gross deceit and deception, his silence under the circumstances operating as a representation that the bonds were Liberty Bonds. p. 452.

2. If, on any reasonable theory, a complaint presents facts sufficient to justify a recovery, it will be sustained, especially on demurrer *ore tenus*. p. 453.

APPEAL from a judgment of the county court of Trempealeau county: E. F. HENSEL, Judge. *Affirmed.*

The appeal is from a judgment rescinding a contract and granting a permanent injunction.

The plaintiffs are copartners engaged in the agricultural implement business at Whitehall, Wisconsin, and some time during the summer of 1922 had sold a tractor to one Bautch, receiving a part payment in cash and a chattel mortgage to secure the balance. Shortly after receiving the tractor Bautch suffered a severe personal injury, disabling him from using the tractor for the balance of the season, and the plaintiffs, desiring to relieve Bautch from his obligation and at the same time to secure to themselves the benefits of a sale, attempted to resell the tractor. *B. B. Olson,* one of the plaintiffs, being informed that the defendant was in the market for a tractor, interviewed him and learned that the latter had $700 worth of bonds that he desired to turn in on an exchange. *Olson* was of the opinion that the bonds were Liberty Bonds and thereupon inquired the year and the issue of the bonds. The defendant replied that he did not know what issue they were but that he wanted dollar for dollar for them. *Olson* thereupon stated that it made very little difference to him what issue they were if all of the bonds were substantially at par. Thereupon the defendant agreed to take the tractor for the sum of $800, to pay Bautch the sum of $100 in cash and turn over to the plaintiffs the $700 worth of bonds. On the 9th day of August, 1922, *Olson* and the defendant went to

the home of Bautch, and, the parties having agreed as aforesaid with respect to the transfer, *Olson* agreed to pay to Bautch the sum of $170 for his interest in the tractor. *Olson's* eyesight being defective and having failed to take his glasses with him, he requested the defendant to fill out a blank check for him, and upon signing the check delivered it to Bautch and requested the defendant to deliver the Liberty Bonds.    The defendant thereupon handed *Olson* seven bonds of the Northern Michigan Land Company, each of the face value of $100, and *Olson,* believing they were Liberty Bonds, counted them without making an inspection, put them in his pocket and drove to his home, where, upon investigation, he for the first time ascertained that the bonds were the obligation of the land company aforesaid.    These bonds were utterly valueless, the company being in the hands of a receiver and having defaulted both in the payment of principal and interest.    The defendant himself testified that he had attempted in vain to dispose of the bonds for fifty cents on the dollar.    On discovering that he had not received Liberty Bonds, *Olson* immediately attempted to communicate by telephone with the defendant but was unable to reach him, and on the following day called the defendant up over the phone and told him that the bonds were not Liberty Bonds and that he desired to rescind the exchange, and a few days thereafter an offer for rescission was made in person, which offer was refused. Defendant upon that occasion advised the plaintiff to dispose of the bonds in the same manner as he had done.

The case was submitted to a jury on a special verdict and the jury found, first, that the defendant, for the purpose of inducing the plaintiff to enter into the sale, represented that the bonds in question were Liberty Bonds; second, that the plaintiff believed said representations and relied thereon; third, that the defendant intended to pay the plaintiff with the land company's bonds; fourth, that the plaintiff believed that he was to be paid in Liberty Bonds;

fifth, that the defendant knew that the plaintiff believed that
he was to be paid in Liberty Bonds and that the plaintiff,
at the time the bonds were handed to him, believed that he
was receiving Liberty Bonds; sixth, that the plaintiff exer-
cised reasonable diligence in' attempting to rescind the con-
tract of sale. Upon the verdict so rendered judgment of
rescission was entered in favor of the plaintiffs and the
defendant was enjoined from taking possession of the
tractor and of disposing of or incumbering the same.

· Defendant's counsel assigns as error, first, the refusal
of the court to sustain a demurrer *ore tenus* to the plaintiffs'
complaint; second, that the court should have directed a ver-
dict in favor of the defendant at the close of the evidence.

For the appellant there was a brief by *J. A. Markham* of
Independence and *Cowie & Hale* of La Crosse, and oral
argument by *Quincy A. Hale.*

*Ole J. Eggum* of Whitehall, for the respondents.


- DOERFLER, J. ' We will first treat the second assignment
of error.

· Defendant's counsel contends that his client at no time
made false or fraudulent representations with respect to the
bonds and that he never represented the bonds as Liberty
Bonds. There is evidence, however, which is quite persua-
sive that when the subject of bonds was mentioned by the
defendant, *Olson* had in mind that they were Liberty Bonds.
This is made manifest by his inquiry as to the year and issue
of the bonds. This transaction took place not many years
after the extensive Liberty Bond campaigns of the war.
Plaintiffs were engaged in the operation of a small imple-
ment business in the city of Whitehall. Liberty Bonds had
been sold and purchased quite generally by the people of the
state, and it can readily be conceived that when the subject
of bonds was mentioned in that locality it immediately
brought to mind the subject of Liberty Bonds. It appears
also, without contradiction, that before the exchange was

effected *Olson* made inquiry at the bank to ascertain the value of the various issues of Liberty Bonds. When the check for $170 was delivered to Bautch, *Olson* requested the delivery of the *Liberty Bonds.* Defendant therefore became sufficiently apprised of the fact that *Olson* had in mind that the bonds were Liberty Bonds and that he received the bonds as such. The defendant at all times knew that the land company's bonds were utterly worthless. Nevertheless, he took advantage of the situation and pawned off upon the plaintiffs these worthless bonds, so that if the contract of exchange were to be sustained the plaintiffs would part with an article of personal property of the conceded value of $800 and receive in exchange therefor bonds which are not worth the paper upon which they are printed. If this transaction on the part of the defendant does not constitute fraud, then it is difficult to conceive a case of fraud under any circumstances. It is true that the defendant at no time expressly represented the bonds as Liberty Bonds. It cannot be denied, however, that *Olson* was under the impression that he was receiving Liberty Bonds and that the defendant was fully aware of his state of mind upon the subject. This presented a situation where honesty and fair dealing required the defendant to speak, and to speak the truth and the whole truth, and a failure so to do constituted gross deceit and deception—a species of fraud as reprehensible as though it had been practiced by affirmative false and fraudulent representations, and silence under such circumstances, to all intents and purposes, operated as a representation that the bonds were Liberty Bonds. 26 Corp. Jur. 1068, and cases cited in note 81; 26 Corp. Jur. 1073, and cases there cited in note; *Swift v. Rounds,* 19 R. I. 527, 35 Atl. 45, 33 L. R. A. 561, and cases cited in opinion; 12 Ruling Case Law, p. 307, § 68, and notes.

The defendant contends that the court erred in refusing to sustain his demurrer *ore tenus* to plaintiffs' complaint. The pleading of the plaintiffs is not a work of art; it does not.

present a complaint in equity for rescission on account of fraud couched in the usual and ordinary terminology of skilled pleaders in actions of that kind. Under our modern and liberal rules of pleading, a pleader may, in substance, present the facts, and it is from such facts that the court must determine whether the allegations are sufficient to constitute a complaint for rescission based upon fraud. It appears from the *complaint* that the defendant represented the bonds as Liberty Bonds and that the plaintiffs relied upon such representations and thereupon entered upon the exchange; that in reliance upon such representations plaintiffs parted with $170 of money and released the chattel mortgage of Bautch and received the worthless bonds in exchange for the tractor. If to any extent, on any reasonable theory, the complaint "presents facts sufficient to justify a recovery, it will be sustained." 21 Ruling Case Law, 519. This is particularly so where the objection is taken by demurrer *ore tenus*.

We therefore hold that the complaint was sufficient and that the demurrer *ore tenus* was properly overruled.

From what has been said, we have come to the conclusion that the judgment of the lower court must be affirmed.

*By the Court.*—Judgment affirmed.