Argued March 15, affirmed July 31, 1928.

MARY E. PENNEBAKER *v.* E. W. KIMBLE ET AL.

(269 Pac. 981.)

For appellants there was a brief and oral argument by *Mr. Keith A. Caldwell.*

For respondent there was a brief over the name of *Messrs. Jaureguy & Tooze,* with an oral argument by *Mr. Nicholas Jaureguy.*

ROSSMAN, J.—■ The principles of law involved in this action are old and well established; they present no occasion for a lengthy dissertation.

It is insisted that plaintiff's allegation that the defendants represented to her that they held a permit to sell capital stock in the Guarantee Indemnity Company, and that this corporation was authorized to offer to the public its stock was not supported by the evidence. The defendants contend further that such a representation would be nonactionable because a statement to that effect would amount to nothing but the defendants' conclusion upon a proposition of law. We do not agree with either of these contentions. To communicate a representation it is not necessary that the party should speak words, or write a message. The desired result may be accomplished oft-

times by conduct. Indeed, the tongue and the pen are only two of the numerous means of transmitting messages. The buoy in the harbor tells the navigator of the hidden rock, or shoal, without the use of pen or tongue; the lighthouse silently serves its purpose. One who draws a check upon a bank represents thereby that he has a deposit to meet the demand. Paul Revere and his lantern needed no words to supplement the message which was conveyed to all who saw. The mere statement of these few instances readily brings to mind many more. Indeed, the action for deceit, we are told by the New Jersey court in *Berkowitz* v. *Lyons*, 98 N. J. Law, 198 (119 Atl. 20), had its origin in false impersonation. Thus in its decision we find:

" * * Indeed, the action for deceit had its origin in false impersonation. As early as 9 and 10 Edw. I, the original writ of the King's Bench went because in many causes actions were brought by suitors, without authority, and judgments were entered against defendants, whose presence was inpersonated in the levying of a fine. 2 Poll. & Mait. His. Eng. L. 534, &c.

"Since that period Lord Cairns in the House of Lords declared: 'If one conducts himself in a particular way with the object of fraudulently inducing another to believe in the existence of a certain state of things, and to act upon the basis of its existence, and damage resulted therefrom to the party misled, he who misled him will be just as liable as if he had misrepresented the facts in express terms.' *Northeastern Railway Co.* v. *Wanless*, L. R. A. H. L. 12; *Downey* v. *Finnecone*, 205 N. Y. 251 [98 N. E. 391, 40 L. R. A. (N. S.) 307].'

"So we find it stated generally that: 'It may consist in the creation of a false impression by words or acts, or by any trick or device, a deep laid scheme of swindling, or a direct falsehood, a combined ef-

fort of a number of associates or the sole effort of a solitary individual.' 12 R. C. L. 232, and cases cited.

"An issue of that nature necessarily involves the determination of a question of fact, and its solution is peculiarly for the jury. *Cole* v. *Taylor*, 22 N. J. L. 59; *Crosby* v. *Wells*, 73 N. J. L. 790 [67 Atl. 295]; *Bingham* v. *Fish*, 86 N. J. L. 316 [90 Atl. 1106]."

In *Olson* v. *Skroch*, 182 Wis. 448 (196 Pac. 767), the plaintiff sold to the defendant a tractor for the sum of $800, of which $700 was to be paid in bonds. The defendant did not expressly mention the type of bonds, but was well aware of the fact that the plaintiffs believed the bonds were Liberty bonds; the circumstances were such that this inference of the plaintiff was natural. With the conclusion of the transaction the defendant handed to the plaintiff $700 of bonds which had no value. The court found that the situation was one which required the defendant to speak, and that a failure to do so constituted deceit and deception. Here, then, was a situation where conduct by silence defrauded the plaintiff.

In *Fish* v. *White*, 180 Iowa, 1176 (162 N. W. 753), the court said:

"It appears without dispute that the shares of stock were issued without authority. The offer of such stock for sale was in itself a false representation that the shares had been issued in accordance with law and that the amount thereof had been, in good faith, paid into the company's treasury."

In *Raymar* v. *Scandinavian American Bank*, 122 Wash. 150 (210 Pac. 477, 25 A. L. R. 716), the court said:

"The keeping of the bank open in the usual manner for the transaction of business, is a representation to

every person dealing with it that the bank is able to keep and perform its contracts, and that the person so dealing takes upon himself nothing more than the ordinary risks incident to the business; in other words it is a representation that the bank is solvent.''

It is needless to quote any further from the authorities, because instances can be readily found of representation by conduct covering almost the full range of human experiences. See, however, 3 Williston on Contracts, § 1499; 26 C. J., Fraud, §§ 10–18; 12 R. C. L., Fraud, § 13.

■ According to the testimony, one of the defendants casually spoke to Mr. H. F. Pennebaker, plaintiff's husband, who was a street-car conductor, while riding upon his car, and told him of the profitable venture in which the defendants were engaged. The result of this conversation, when the husband related it to the wife, was to create a desire in them to know more of the business. Shortly thereafter a conference was arranged and both defendants called at the home of the plaintiff. Still later, the plaintiff and her husband called at the offices of the defendants, consisting of a suite of five rooms in a large office building. In these meetings the defendants gave to the plaintiff a list of the names of the stockholders. Since the plaintiff and the defendant were previously unacquainted, there would be no occasion for the plaintiff to infer that this stock was offered to her alone. Upon the other hand, we believe that the foregoing circumstances justified the inference, which she testified she drew, that the corporation was offering its stock to the public, and that the defendants possessed the necessary permits to sell stock under the provisions of the Blue Sky Law.

■ A representation that one is possessed of a permit to sell stock is not the mere expression of an opinion upon a proposition of law, but is the statement of a fact. Whether he is possessed of the written document requires an inspection of his belongings, but does not involve an inquiry into the law. The materiality of this fact we believe is self-evident. Had the plaintiff known that the defendant had failed to comply with the law, she, perhaps, would not have entertained their offers. Her evidence made this a proper field for the jury's determination.

The defendants contend that her transaction was with the defendant, E. W. Kimble, and consisted of a trade wherein she disposed of her land for some of his personal stock. They contend that this being a single, isolated instance, no permit was required. If the plaintiff admitted that this contention was true in fact the defendants' proposition of law would very likely be applicable; but the plaintiff insists that she obtained her stock from the corporation. The court, under appropriate instructions, submitted both theories to the jury. No error was committed in these particulars.

■ As will appear from the review of the allegations of the complaint preceding this decision the defendants represented to the plaintiff that the corporation had authorized them to state to her that it would pay a bonus within a certain period of time. She alleges that this representation, like the others, was false. The defendants cite *Hermann* v. *Clark*, 108 Or. 457 (218 Pac. 608), and *Cochran* v. *Baker*, 34 Or. 555 (52 Pac. 520, 56 Pac. 641), as authority for the proposition that when an agent makes a contract on behalf of his principal in excess of his authority, the

resultant action upon the principal's repudiation is in contract and not in tort. Be this as it may, the plaintiff alleges that the defendants fraudulently misrepresented their authority. Under such circumstances the plaintiff may sue in fraud: Mechem on Agency, § 1398; 2 C. J. 807.

██ As appears from the brief review of the pleadings which we have set out, the complaint alleges that it was understood that the grantee in the deed should be the corporation and that the plaintiff deemed this a matter of importance due to the fact that the defendants informed her that her status as a stockholder would continue her interest in the property and enable her to a limited degree to exercise supervision over it. As a matter of fact the grantee was the wife of one of the defendants. The defendants argue that a grantor, who fails to read his deed before executing it, will not be permitted to introduce evidence that he did not know what it contained. But, in the case before us, the plaintiff testified that she examined the deed which the defendants had prepared before attaching her signature, and noticed that the space for the grantee's name was blank; that she inquired what name would be inserted there, and was assured that the Guarantee Indemnity Company would be the grantee. The many interesting problems that might arise out of this unauthorized insertion of the name of A. S. Kimble as grantee are not presented by any exception, nor are they argued in the brief. Hence, we shall express no opinion upon them. For the plaintiff's case it suffices that the defendants made a representation of their present purpose, which was false. The result of this act of fraud upon their part at least cast a cloud upon the plaintiff's title; hence

it was injurious. When the defendants stated that they would insert the name of the corporation as the grantee, their representation concerned their mental status. Whether such a representation is actionable is not challenged by any exception of the defendants, and is not argued. However, the circumstances may be such that if one misrepresents his condition of mind the representation is actionable: *Smith* v. *Anderson*, 74 Or. 90 (144 Pac. 1158); *Olston* v. *Oregon Water Power & Ry. Co.*, 52 Or. 343 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915); *Boelk* v. *Nolan*, 56 Or. 239 (107 Pac. 689); *Gale* v. *McCullough*, 118 Md. 287 (84 Atl. 469), and generally, 26 C. J., Fraud, § 26.

■ The defendants' exceptions disclose no error here. The identity of the grantee frequently is not a material matter to the grantor. If it is not material, an action of fraud based upon a misrepresentation concerning his identity would fail. But the grantor may be peculiarly interested in having the property conveyed to a certain individual, and to none other; in other words, he may make the identity of the grantee a material matter. Under such circumstances an action of fraud could be founded upon a misrepresentation of the identity of the grantee. See *Stewart* v. *Joyce*, 201 Mass. 301 (87 N. E. 613); *Robinson* v. *Richards*, 209 Mass. 295 (95 N. E. 790). The plaintiff explained why she was interested in having the property conveyed to the corporation. The materiality of this matter was submitted to the jury under appropriate instructions. We find no error here.

■ The defendants argue that the other representations charged against them also concerned matters which were immaterial to the transaction. The au-

thorities are not in harmony whether the test of materiality is subjective or objective; but we need not determine this interesting problem, although some of the proof has this double aspect. When the defendants made their representations concerning a 7 per cent dividend and a 10 per cent bonus, and represented that the corporation and themselves possessed permits to sell stock in Oregon, they dealt with matters which we believe were subjective and material to the transaction. The complaint also alleges that they represented that prominent business men of Portland, including Mr. George W. Weatherly, had purchased stock in the company. Such a representation, when made to a woman, or a workingman, is generally persuasive. We believe that the evidence warranted the jury in finding that this representation was made, and that the plaintiff placed reliance upon it. She testified that she was familiar with the reputation of Mr. Weatherly as a successful business man. She also testified that no other prominent business men were interested in the company. Mr. Weatherly had subscribed for $300 worth of stock; within a few month's time his stock was returned and he was reimbursed for the amount of his investment; at that time the company had received from all sources, $3,108.43 and had expended $5,852.20. The plaintiff contended that the sale of stock to Mr. Weatherly was not a *bona fide* one. We believe that this was properly a field of inquiry for the jury, and further that this allegation to the effect that prominent business men were associated in the company concerned a material matter.

The plaintiff called as a witness one William D. Bennett, who was permitted to testify over the objections of the defendants that he had made an

inspection of Bowdoin Dome and the value of the defendants' properties for oil leasing purposes. The sole objection which the defendants present to the admission of Mr. Bennett's testimony is that he was not properly qualified to express an opinion. The witness had testified that he had had experience in the drilling of oil wells and the negotiation of leases upon oil lands. He had been interested in the handling of oil and gas leases since 1903, and his father had been engaged in the gas business prior to that time. His experience covered several states, including Montana. His inspection of Bowdoin Dome occurred in 1925; the transaction in question took place in 1923. This variance in time would not of necessity render his testimony inadmissible in the absence of any circumstance showing that in the interval conditions in this kind of endeavor changed. We believe that the court was justified in receiving his testimony.

■ Whether one who purports to be an expert is possessed of qualifications and experiences sufficiently greater than those possessed by the ordinary juror, so that his testimony will in fact enlighten the jury, is generally a matter which can be safely entrusted to the discretion of the trial judge. We find no abuse of this discretion.

■ The defendants complain because the trial court permitted the plaintiff to cross-examine the defendant H. F. Kimble in regard to the expenditure of some of the company's money, particularly for office rent. The defendants argue that this examination went outside of the scope of the direct examination. Upon direct examination this witness produced the contract referred to in the answer, in which was incorporated a statement of the receipts and disburse-

ments of the corporation; this statement bore the signature of this witness. His production of this statement, followed by defendants' act of offering it in evidence, rendered this examination proper. But, in addition, the witness testified that he discussed the matter of a bonus with the plaintiff before she took stock. He also discussed with her the desirability of her execution of the dissolution contract. Both of these matters involved the financial stability of the enterprise and rendered this cross-examination proper.

■ The defendants argue that because there is evidence to the effect that the plaintiff executed the instrument which preceded the dissolution of the corporation and which contained a stipulation whereby all waived any cause of action of which they might be possessed against the company, its officers, or agents, the plaintiff was no longer in a position to maintain this action. The plaintiff denies that she executed this instrument. She contended that the defendants spoke to her about a reorganization of the company, and that pursuant to their proposition she surrendered to them her certificates of stock. This incident occurred within a few months after the company had organized and the plaintiff had acquired her stock. The defendants' evidence seems to us as being more persuasive; nevertheless the determination of this matter was for the jury and not for the court. The jury's findings control us.

The defendants at the beginning of the trial objected to the admissibility of all evidence, thereby raising the question of the sufficiency of the complaint. We have carefully considered the complaint and find that it states a cause of action. It alleges that the defendants made their representations ''by

their actions and conduct'' as well as by their spoken words.

The defendants moved for a nonsuit and a directed verdict. A careful consideration of the testimony discloses that it supports all of the elements of actionable fraud enumerated in *Wheelwright* v. *Vanderbilt,* 69 Or. 326 (138 Pac. 857). Accordingly the court committed no error when it denied these motions. The instructions given and those requested and refused have likewise received our careful consideration. We find no error here.

It follows from the foregoing that the judgment of the lower court must be affirmed.    AFFIRMED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.