Broadfoot, J.
The trial court stated the facts concisely as follows:
*509 “There is little or no dispute as to the facts and the court finds them to be as follows: Ottinger was employed as a caterpillar operator by Paul V. Farmer, a grading contractor. Ottinger had lost .his driver’s license by reason of his previous driving record, and to have his driver’s license reinstated it was necessary that he establish proof of financial responsibility with the motor vehicle department. He consulted his employer, Farmer, who said that he would have his insurance agent come to see Ottinger. Shortly thereafter William.Dressier, an agent employed by the Hardware Mutual Insurance Company, called upon Ottinger at a place where he was working. Dressier filled in an application form which had been sent to him by Dairyland. A photostatic copy of this application has been received in evidence as Exhibit 1. The lines encircling and connecting the names of Ottinger and his wife were made at the home office of the company.
“Ottinger made a partial payment of the premium and later paid the remainder of a quarterly instalment at Dressler’s home. A form of binder was issued effective May 29th, and subsequently a policy of insurance, identified as Exhibit 3, was issued insuring a 1949 Oldsmobile car. At least three renewals of the policy appear in the record. Ottinger started to read the policy after he received it, did not understand it and did not complete the reading of it. Ottinger had completed the eighth grade in school and his wife had not completed high school. Arlene Ottinger had no money or property when she was married and had not earned anything thereafter. She was unable to drive an automobile and had no driver’s license. She contributed nothing toward the purchase of Ottinger’s automobile and the car was registered in his name.
“At the time of the accident the Ottinger automobile was being operated by George Sackett, the brother of Arlene Ottinger, with her consent. Ottinger was informed by no one that his wife would be named in the policy as one of those insured and he did not know that as an insured she was excluded from recovering under the policy. In fact, he did not understand the policy at all.”
An officer of Dairyland was a witness at the hearing and testified that his company specialized in writing automobile *510 liability insurance for substandard risks; that in all instances it included the name of the spouse of a married applicant as a named insured and did not require such spouse to sign the application; that the purpose of so doing was to reduce its risk under the policy and that its rates were based upon the exclusion of both husband and wife where an applicant is married. The application blank does not state that the spouse will be named as an insured. No literature is furnished giving that information. One question and answer in the record follows:
“Q. Is it true, Mr. Nuernberg, this is essentially a device to reduce potential liability under the policy? A. I think so. I can see one advantage for the named insured, that is she can give consent and permission to drive the car, which she wouldn’t if she were not an insured.”
The reasons given by the trial court for its determination are revealed by the following excerpts from the memorandum decision:
“The law is well settled that mere silence does not constitute fraud, but it is equally well settled that silence accompanying an artifice which is likely to deceive is fraud, 23 Am. Jur., p. 870, secs. 93 and 94.
“The device which the court considers an artifice is that of taking an application which contains no reference to the spouse becoming a named insured and then gratuitously inserting the name of the spouse as an insured and following it with an exclusion of a right to recover by that person. It is the court’s opinion that such a procedure makes it the duty of Dairyland to disclose to the applicant the effect of its doings.
“It is the decision of the court that the above-described conduct by Dairyland was fraudulent.
“There is another equally compelling ground upon which plaintiff could have sought reformation of the insurance policy. Sec. 204.34, sub. (1) of the Wisconsin statutes provides : ‘No policy of insurance, agreement of indebtedness, or bond covering liability or loss arising by reasun of the *511 ownership, maintenance, or use of a motor vehicle issued in this state shall exclude from the coverage afforded or provisions as to benefits therein any of the following:’ And at sub. (2) that statute provides as follows: ‘No policy of insurance, agreement of indebtedness, or bond referred to in sub. (1) shall exclude from the coverage afforded or the provisions as to the benefits therein provided persons related by blood or marriage to the assured.’
“The procedure followed by Dairyland in the issuance of this insurance policy is patently an artifice employed for the purpose of circumventing the above statute. The court bases its conclusion in this respect upon the well-established fact that Arlene Ottinger had no automobile, could not drive and had no use, whatever, for a liability insurance policy on her husband’s car.”
In further support of its position the trial court could have cited 23 Am. Jur., Fraud and Deceit, p. 854, sec. 78, and Olson v. Skroch, 182 Wis. 448, 196 N. W. 767.
We take a somewhat-different view of the situation than did the trial court. Dairyland cites several cases to the effect that an insurance policy is a contract. Ottinger applied for insurance in his own name. In this case, with his limited education and lack of understanding of the policy, he had every reason to believe the policy had been issued to conform to his application. He knew that Mrs. Ottinger’s name appeared on the policy but did not know the effect thereof.
In addition, Dairyland is in no position to claim it has a contract with Mrs. Ottinger. As a general rule two persons cannot enter into a contract which makes a third person a party thereto without his or her knowledge and consent. Mrs. Ottinger had no interest in the automobile covered by the policy nor in any other automobile. She had no need for automobile liability insurance and derived no benefit from the policy issued by Dairyland. Her name, therefore, should not have been included as an insured in the policy without her knowledge and consent.
*512 Under the circumstances revealed by the record we hold that Dairyland committed legal fraud in failing to disclose to both Mr. and Mrs. Ottinger the fact that she was included in the policy as a named insured and that she was excluded from coverage because of that fact. We affirm the order of the trial court on the ground that Dairyland committed legal fraud rather than upon the grounds stated by it. It is unnecessary, therefore, to determine whether or not the acts of Dairyland constituted an artifice employed for the evasion or circumvention of sec. 204.34 (2), Stats. A decision on that question is reserved for future determination.
By the Court. — Order affirmed.
Currie, J., took no part.