Argued and submitted September 10, 1996, affirmed March 5, 1997

Steven H. SMALLWOOD,
*Respondent,*

*v.*

Lanny H. FISK,
Carol M. Fisk, Norwestco, Inc.,
*Appellants,*

*and*

F & F GEORESOURCE ASSOCIATES, INC.,
*Defendant.*

(92-CV-0055-ST; CA A84226)

934 P2d 557

Kelly E. Ford argued the cause and filed the briefs for appellants.

Linda Reed Haase argued the cause and filed the briefs for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

Riggs, P. J., concurring.

**LANDAU, J.**

At issue in this case is whether punitive damages constitutionally may be awarded against a defendant on a verdict of common-law fraud. Defendants contend that such awards are prohibited, because they effectively punish constitutionally protected speech. Plaintiff contends that the speech protections of the Oregon Constitution constitute no impediment to such an award. The trial court agreed with plaintiff and included in its judgment against defendants an award of punitive damages on a common-law fraud verdict. We affirm.

Defendants Lanny and Carol Fisk formed defendant Norwestco, Inc., to explore and develop natural gas fields in Oregon. Plaintiff worked for Norwestco as a vice president. Plaintiff invested $20,000 of his own money in Norwestco and invested an additional $40,000 entrusted to him by a friend. He did so in response to representations of the Fisks as to, among other things, the current and probable future value of the stock, the number of other investors, an anticipated public stock offering in the near future and the uses to which the investments would be put. He also loaned the company $15,000. Plaintiff later learned that the money he had invested was not put to the uses the Fisks had described, that stock options had been issued to other investors, which effectively diluted the value of his own investment, and that the Fisks' other representations as to the value of the stock were false. Plaintiff sued the Fisks and Norwestco, alleging common-law fraud, securities fraud and other claims.[1] Defendants asserted various counterclaims. The jury found for plaintiff, awarding him $15,000 on the unpaid loans and $20,000 in general damages for common-law and securities fraud. It also awarded him $250,000 in punitive damages against Lanny Fisk and Norwestco on the common-law fraud claim.[2] The jury rejected all of defendants' counterclaims.

---

[1] Plaintiff also sued F & F GeoResource Associates, Inc., an entity formed by the Fisks that owned a substantial portion of Norwestco. That defendant, however, is not a party to the appeal.

[2] The jury also awarded plaintiff $125,000 in punitive damages against Carol Fisk, but the trial court granted her judgment notwithstanding the verdict as to that award, and that decision has not been challenged on appeal.

Defendants moved for judgment notwithstanding the verdict on the punitive damages award. The trial court denied the motion and entered judgment accordingly.

On appeal, defendants assert various assignments of error, all but one of which we affirm without discussion. The sole remaining assignment is that the trial court erred in entering judgment for plaintiff on the punitive damages award. Defendants argue that punitive damages may not be awarded for the commission of an intentional tort that involves speech. According to defendants, because Article I, section 8, of the Oregon Constitution precludes the imposition of civil punishment for speech, punitive damages for common-law fraud cannot be countenanced, because the tort necessarily involves speech. Particularly in the light of the fact that their liability in this case is predicated on their alleged verbal misrepresentations, defendants argue, it is clear that punitive damages are constitutionally impermissible.

Article I, section 8, of the Oregon Constitution provides:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

In *Wheeler v. Green*, 286 Or 99, 593 P2d 777 (1979), the Supreme Court held that Article I, section 8, prohibited an award of punitive damages for defamation. The court held, albeit with little explanation, that

> "in a common-law civil action for damages, the defendant who has abused the right of free expression by defamatory statements may be held responsible only to the extent of permitting the injured party to recover for the resulting injury to reputation—that is, to recover compensatory damages."

*Id.* at 118. In subsequent cases, the court held that an award of punitive damages based on intentional infliction of emotional distress accomplished by speech also ran afoul of the speech protections of Article I, section 8, *Hall v. The May Dept. Stores*, 292 Or 131, 146-47, 637 P2d 126 (1981), but that

punitive damages based on intentional infliction of emotional distress accomplished by "non-expressive" conduct did not. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 629, 733 P2d 430 (1987).

Meanwhile, the Supreme Court refined its analysis of Article I, section 8. In *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), the court held that, whether a particular law violates the guarantees of Article I, section 8, depends on the nature of the law. If the law is directed to "the substance of any 'opinion' or any 'subject' of communication," it is foreclosed by the constitution

> "unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and * * * the guarantees then or in 1859 demonstrably were not intended to reach."

*Id.* at 412. The court offered as examples "perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud and their contemporary variants." *Id.* If the law is directed at forbidden results, the court held, it must be examined for vagueness or overbreadth. *Id.* at 416-17. Subsequent case law further refined the analysis, so that there are at least two additional categories beyond those laws that are targeted directly at the content of speech. *See generally State v. Plowman*, 314 Or 157, 163-64, 838 P2d 558 (1992), *cert den* 508 US 974, 113 S Ct 2967, 125 L Ed 2d 666 (1993).

The Supreme Court recognized the relationship between the two lines of cases in *Huffman and Wright Logging Co. v. Wade*, 317 Or 445, 857 P2d 101 (1993), and developed a decisional template for examining the issue of whether punitive damages may be awarded for certain tortious conduct that implicates speech. The court explained:

> "[W]e hold that the first step in determining the availability of punitive damages for an intentional tort is to put the common-law tort on the same footing as all other laws, *i.e.*, to place the tort in one of the three *Robertson* categories. *See City of Hillsboro v. Purcell*, 306 Or 547, 553, 761 P2d 510 (1988) ('The nature of the prohibition, either civil or criminal, is immaterial to the first sentence of Article I, section 8, which directs that "no law" shall restrict or restrain speech,

writing [or] printing.'). If a tort permits liability for the content of speech, punitive damages are not recoverable. *Wheeler v. Green, supra.*[10] If a tort permits liability for speech-caused harm, then a defendant who requests it is entitled to an instruction limiting the tortious predicate for punitive damages to conduct not protected by the free speech provision of Article I, section 8. *Lewis v. Oregon Beauty Supply Co., supra*, 302 Or at 629. If a tort permits liability for harm not caused by speech, but the defendant contends that Article I, section 8, prohibits an award of punitive damages for the particular conduct involved, then a defendant who requests it likewise may be entitled to a limiting instruction.

---

"[10] In the context of analyzing a criminal law, *State v. Robertson, supra*, 293 Or at 412, noted an exception when 'the scope of the restraint is wholly confined within some historical exception * * *.' "

*Id.* at 457.

■ We begin, then, with the question whether fraud "permits liability for the content of speech." To establish fraud, the plaintiff must plead and prove (1) a representation; (2) its falsity; (3) its materiality; (4) the defendant's knowledge of its falsity or ignorance of its truth; (5) the defendant's intent that the representation should be acted on by the plaintiff and in the manner reasonably contemplated; (6) the plaintiff's ignorance of its falsity; (7) the plaintiff's reliance on its truth; (8) the plaintiff's right to rely on the representation; (9) and the plaintiff's resulting injury. *Rice v. McAlister*, 268 Or 125, 128, 519 P2d 1263 (1974). At least three of those elements involve the content of speech: misrepresentation, falsity and materiality. By definition, a "representation" involves speech, and its falsity and materiality are determined by its content. Of course, fraud may be committed by conduct, but only to the extent that the conduct *communicates a representation* that is false and material. As Prosser and Keeton explain:

> "The representation which will serve as a basis for an action of deceit, as well as other forms of relief, usually consists, of course, of oral or written words; but it is not necessarily so limited. The exhibition of a document, turning

back the odometer of an automobile offered for sale, drawing a check without funds, or a wide variety of other conduct *calculated to convey a misleading impression* under the circumstances of the case, may be sufficient. Merely by entering into some transactions at all, the defendant may reasonably be taken to represent that some things are true—as for example, that a bank which receives deposits is solvent, or that a stock certificate sold is a valid one, and he has a permit to sell it. It is trite to say in such cases that *'actions may speak* louder than words.' "

Prosser and Keeton, *Handbook on the Law of Torts*, 736 (5th ed 1984) (emphasis supplied). Thus, liability for committing fraud may be based on conduct, but only to the extent that the conduct speaks a material falsehood. At least as early as *Pennebaker v. Kimble*, 126 Or 317, 269 P 981 (1928), the Oregon Supreme Court has applied the same rule, permitting fraud to be established upon proof of conduct that "communicate[s] a representation." *Id.* at 322. Thus, we conclude that, whether by verbal speech or by conduct, liability for fraud necessarily depends upon a representation, that is, speech, which is false and material. That plainly is liability based on the content of the speech.[3]

■      Having determined that fraud imposes liability on the basis of the content of speech, we turn to the question whether there is an historical exception that applies to such a law. Before doing that, however, we pause to note that there

---

[3] The concurrence suggests that fraud does not necessarily involve an "opinion or subject of communication," because it may be committed by a failure to speak:

"An omission is not a communication at all; it is a noncommunication, and it is the noncommunication that results in the misrepresentation."

146 Or App at 704. The concurrence, however, misunderstands the nature of the elements of fraud. By itself, an omission creates no misrepresentation and results in no liability. It is only in the context of other representations or acts, which do constitute an "opinion or subject of communication," that a failure to speak may make those other representations or acts false, thus giving rise to liability for fraud. That only makes sense. Given that one of the elements of fraud is the falsity of a representation, it is difficult to understand how, by itself, saying nothing can be a falsehood; it is only in the context of other communicative words or acts that failing to speak may render false what has been explicitly or implicitly communicated. That explains why, for example, a person who decides to make a misrepresentation about some fact has a duty to tell the entire truth about that fact. *See, e.g., Heise v. Pilot Rock Lbr. Co.*, 222 Or 78, 89-90, 352 P2d 1072 (1960) ("When the purchaser undertakes to answer inquiries, he must tell the truth * * *. Half-truths are fraud[.]").

is a "wrinkle" in the Supreme Court's analysis on this point, as described in *Huffman and Wright Logging Co.* The court declared somewhat categorically that "[i]f a tort permits liability for the content of speech, punitive damages are not recoverable." *Huffman and Wright Logging Co.*, 317 Or at 457. Only in a footnote did the court recall the historical exception analysis of *Robertson*, and even then, the court qualified its reference with the phrase "[i]n the context of analyzing a criminal law." *Id.*, 317 Or at 457 n 10. On the surface, that sounds as if the court is saying, indirectly at least, that the historical exception analysis does not apply to civil torts that permit liability for the content of speech. The court did not say that, however, and in the absence of a declaration that that is what it meant, we are disinclined to read such an inference into its opinion. It conceptually makes no sense to say that certain speech was intended by the founders to be exempt from Article I, section 8, for criminal purposes but not for others. It is tantamount to saying that the founders intended to allow people to be jailed for their fraud but not to allow them to be fined for the same conduct. Indeed, the court's own citations in *Huffman and Wright Logging Co.* acknowledge that "[t]he nature of the prohibition, either civil or criminal, is immaterial" to the prohibition against restrictions on free speech. *Id.* at 457 (quoting *City of Hillsboro v. Purcell*, 306 Or 547, 553, 761 P2d 510 (1988)). We conclude, therefore, that *Robertson's* historical exception analysis does apply.[4]

Fraud is the subject of such an historical exception. The court in *Robertson* included fraud in its list of examples of recognized exceptions to the prohibitions of Article I, section 8. *Robertson*, 293 Or at 412. Indeed, one of the earliest of

---

[4] The concurrence disagrees, commenting that it

"can see a rationale for limiting the historical exception to the criminal context: Speech or conduct, otherwise protected by constitutional guarantees of expression, should be subject to penalty because of an historical prohibition only if the conduct offends society's sensibilities to the point of justifying criminal sanctions."

146 Or App at 704-05. With respect, that merely begs the question. To say that speech should be subject to penalty if it justifies criminal sanctions simply does not explain why the same speech should not *also* justify civil sanctions.

Oregon's laws provided for both imprisonment and civil punitive damages for fraud. An 1864 statute provided that anyone convicted of "gross fraud or cheat at common law" was to be imprisoned and also was to be "liable to the party defrauded in double damages, to be recovered by civil action," even if not convicted. General Laws of Oregon, Criminal Code, ch 3, § 565, p 417 (Deady 1843-72). That statute was based on an earlier territorial statute, enacted in 1855, to the same effect. Stat Or, Crim Code, ch 4, § 31, p 218 (1855).

It is clear, then, that allowing liability for punitive damages for fraud does amount to punishing the offender for the content of his or her speech, but that the constitutional guarantees of free expression were never intended to extend protection to that type of expression. Accordingly, we hold that it was not error for the trial court to have allowed the jury to award plaintiff punitive damages on his claim for common-law fraud.

Affirmed.

**RIGGS, P. J.,** concurring.

I agree with the majority that the speech protections of Article I, section 8, of the Oregon Constitution, present no impediment to the award of punitive damages in this claim for common-law fraud. In my view, however, it is unnecessary to reach the question of whether the tort of fraud is an historical exception to the constitutional speech protections, because it is not a law directed to "the substance of any 'opinion' or any 'subject' of communication," for which punitive damages would otherwise be prohibited.

In *Huffman and Wright Logging Co. v. Wade*, 317 Or 445, 857 P2d 101 (1993), the court drew a distinction between torts, such as defamation, that have *as one of their elements* the content of *speech or writing, Wheeler v. Green*, 286 Or 99, 593 P2d 777 (1979), and torts, such as intentional infliction of severe emotional distress, *Hall v. The May Dept. Stores*, 292 Or 131, 146-47, 637 P2d 126 (1984), and intentional interference with an economic relationship, *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 733 P2d 430 (1987), that do not have the content of speech or writing *as one of their elements*, but

that readily can be committed by speech, as well as by conduct, or a combination of the two. 317 Or at 455. I believe the court was making a distinction between torts that can *only* be committed by speech and torts that can be committed by speech *or* conduct. The tort of fraud is within the second of those two categories, because it does not have *as one of its elements* the content of speech or writing. It can be committed by speech or conduct, or a combination of the two.

As the majority's quote from Prosser and Keeton, *Handbook on the Law of Torts* 736 (5th ed 1984), explains, fraud is a tort that can, but need not, be committed by speech or writing. A *nondisclosure* of material facts is also actionable as a misrepresentation. *Elizaga v. Kaiser Found. Hospitals*, 259 Or 542, 487 P2d 887 (1971). It is true, as the majority notes, that a nondisclosure is actionable as fraud only to the extent that it misrepresents, but in my view, that type of misrepresentation is not an "opinion or subject of communication" that would, or should be protected as speech under *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). Most volitional human conduct has a purpose; I would not say, however, that every purpose of human conduct is protected as an expression of opinion or the subject of a communication. An omission is not a communication at all; it is a noncommunication, and it is the noncommunication that results in the misrepresentation. To the extent that an omission has as its purpose the creation of a misrepresentation, it is not the type of conduct that is protected as speech. Because the tort of fraud can be committed other than by speech, and because it does not have as one of its necessary elements the content of speech or writing, I would hold that punitive damages are recoverable.

Finally, I would not dismiss quite so readily as the majority the Supreme Court's footnote regarding the application of the historical exception "in the context of analyzing a criminal law." *Huffman*, 317 Or at 457 n 10. I strongly suspect that that note means, more than inferentially, that the historical exception is applicable in the criminal context, *but not* in the civil context. Unlike the majority, I can see a rationale for limiting the historical exception to the criminal context: Speech or conduct, otherwise protected by constitutional guarantees of expression, should be subject to penalty

because of an historical prohibition only if the conduct offends society's sensibilities to the point of justifying criminal sanctions. The historical exception was, after all, first noted in Oregon in the criminal context. Although the exception has been discussed by the Supreme Court in other than criminal cases, I am not aware of any case in which it has been applied to *uphold* a civil penalty, such as punitive damages. I would not make this one the first.