**OREGON LABORERS–EMPLOYERS HEALTH & WELFARE TRUST FUND, et al., Plaintiffs,**

v.

**PHILIP MORRIS, INC., et al., Defendants.**

No. CV–97–1051–ST.

United States District Court, D. Oregon.

June 1, 1998.

---

## FINDINGS AND RECOMMENDATIONS

STEWART, United States Magistrate Judge.

### *INTRODUCTION*

Plaintiffs are six union trust funds (employee welfare benefit plans) that provide health care benefits to participants who are employed under various collective bargaining agreements.[1] Plaintiffs allege that defendants, including eight leading cigarette and

---

1. Originally, the pleadings included five named plaintiffs: Oregon Laborers–Employers Health & Welfare Trust Fund; School District No. 1 Health & Welfare Trust Fund; Northwest Forest Products Association Woodworkers District Lodge 1, IAM AFL–CIO Health & Welfare Plan; United Association Union Local No. 290 Plumbers, Steamfitters & Shipfitters Industry Health & Welfare Plan; and Office and Professional Em-

ployee International Union Local No. 11 Health & Welfare Plan. However, pursuant to the Stipulation for Filing of Second Amended Class Action Complaint (# 119), plaintiffs dismissed as a plaintiff the Northwest Forest Products Association Woodworkers District Lodge 1, IAM AFL–CIO Health & Welfare Plan, and added as plaintiffs the EBA–PGE IBEW Local Union No. 125 Health & Welfare Trust and the AGC–Interna-

smokeless tobacco manufacturers,[2] their public relations and lobbying arms,[3] and their advertising agency,[4] conspired to deceive the public regarding the addictive nature of nicotine, the adverse health effects associated with tobacco product use,[5] and the accuracy of defendants' "independent" research efforts. Complaint, ¶ 2. Additionally, plaintiffs allege that defendants developed sophisticated techniques to manipulate the nicotine delivery of their products so as to create and sustain addiction, conspired to eliminate the development of "safer" cigarettes, mislead the public concerning the amounts of tar and nicotine ingested by smoking "low-tar" or "light" cigarettes, and targeted the marketing of their products at children. *Id,* ¶¶ 2, 183–207.

Plaintiffs allege twelve claims for: (1) violation of the federal and Oregon Racketeer Influenced & Corrupt Organizations Acts ("RICO" and "ORICO"), 18 USC § 1960, *et seq.* and ORS 166.715–735 (Complaint, ¶¶ 217–233,234–251); (2) restraint of trade in violation of the Sherman Antitrust Act, 15 USC § 1 (Complaint, ¶¶ 252–270) and ORS 646.725 (Complaint, ¶¶ 282–294); (3) conspiracy to monopolize in violation of the Sherman Antitrust Act, 15 USC § 2 (Complaint, ¶¶ 271–281) and ORS 646.730 (Complaint, ¶¶ 295–304); (4) unlawful trade practices in violation of ORS 646.608(1) (Complaint, ¶¶ 304–312); (5) fraudulent misrepresentation and concealment (Complaint, ¶¶ 312–325); (6) unjust enrichment (Complaint, ¶¶ 326–334); (7) negligence (Complaint,

¶¶ 335–341); (8) civil conspiracy (Complaint, ¶¶ 342–348); and (9) indemnity (¶¶ 349–354).

Plaintiffs seek to recover funds expended and costs incurred to provide medical treatment to their participants and beneficiaries suffering from tobacco-related illnesses. They also seek: (1) treble damages on their RICO, ORICO, and antitrust claims; (2) punitive damages on their claims for unlawful trade practices, fraudulent misrepresentation and · concealment, and civil conspiracy; and (3) injunctive relief.

Plaintiffs now move to certify a class pursuant to FRCP 23 (docket # 38). The proposed class consists of all Oregon collectively bargained-for health and welfare trusts that have joint trustees. Plaintiffs allege that approximately 50 such health and welfare trusts exist and that each of them are nonprofit trusts, having essentially the same legal structure, operations, functioning, and purpose. Complaint, ¶ 22. Plaintiffs seek class action treatment for all their claims. Defendants oppose the certification request and move to require plaintiffs to present a class action trial plan prior to a ruling on plaintiffs' certification motion (docket # 110). For the reasons that follow, defendants' motion to require a class action trial plan should be denied, and plaintiffs' motion to certify should be granted.

## DISCUSSION

### I. *Overview*

This case is one small part of a large political tug-of-war. On one side, plaintiffs

---

tional Union of Operating Engineers Local 701 Health & Welfare Trust Fund. Thus, the Second Amended Complaint ("Complaint") now lists six named plaintiffs.

2. Defendant manufacturers are Philip Morris, Inc.; R.J. Reynolds Tobacco Co.; Brown & Williamson Tobacco Corp.; British American Tobacco Co., Ltd.; Lorillard Tobacco Co.; Liggett Group, Inc.; The American Tobacco Co.; and the United States Tobacco Co.

3. Defendant public relations and lobbying arms are The Council For Tobacco Research—U.S.A., Inc. (Successor in interest to the Tobacco Industry Research Committee); The Tobacco Institute, Inc.; and Smokeless Tobacco Council, Inc.

4. The advertising agency named as a defendant is Hill & Knowlton, Inc.

5. The bulk of the allegations of the Complaint relate to defendants' *smoking-related* research (or suppression thereof) and defendants' actions relative to the *cigarettes* or *"inhalable tobacco"* products (Complaint, ¶ 52) they manufacture. However, the Complaint often uses the broader terms "tobacco products," "use of tobacco products," and "tobacco-related illnesses." The Complaint also refers to the "addictive nature of nicotine," a component of both smokeless tobacco and inhalable tobacco products. Moreover, plaintiffs describe in detail the link between defendants' smokeless tobacco products and their asserted damages in the form of increased health care costs. Complaint, ¶¶ 35–37. Consequently, this court will assume for purposes of the present motions that plaintiffs' class allegations relate to all of defendants' tobacco products, including both inhalable tobacco products and smokeless tobacco products.

seek certification, urging this court to follow the December 24, 1997 decision of Judge William L. Dwyer, which certified a class consisting of all jointly-administered collectively bargained-for heath and welfare trusts in the state of Washington who have provided or paid for health care and/or addiction treatment costs or services for employees or other beneficiaries. *Northwest Laborers–Employers Health & Security Trust Fund, et al. v. Philip Morris, Inc., et al.,* C97–849WD, USDC 1997 WL 1134971 (WD Wa December 24, 1997).[6] On the other side, defendants urge this court to require plaintiffs to present a class action trial plan or to rule on dispositive motions prior to ruling on the certification motion.

Tempting though it is, this court may not avoid performing the rigorous analysis required under FRCP 23 by simply deferring to Judge Dwyer's ruling. By the same token, this court may not delay a decision on plaintiffs' motion by erecting needless procedural roadblocks. For the reasons that follow, this court concludes that a ruling on plaintiffs' motion to certify is appropriate without awaiting the completion of briefing on dispositive motions and without requiring plaintiffs to present a class action trial plan. Moreover, although this court has serious questions about the viability of some of plaintiffs' claims, it finds that plaintiffs have satisfied the requirements for certification under FRCP 23 and therefore recommends that this case be certified for class action treatment.[7]

The materials submitted by the parties reveal that the parties' positions on class certification reduce to two fundamental differences. First, the parties disagree about whether the claims in this case belong to the trust funds themselves, or really are claims belonging to individual tobacco consumers coincidentally joined by virtue of their entitlement to receive benefits under one of the trust funds' plans. Second, assuming that the trust funds themselves may assert the claims alleged in this case, the parties differ as to whether individual issues overshadow common issues. Defendants maintain that numerous liability, defense, and damages issues require individual proof by each trust fund and thus prohibit class certification. Plaintiffs counter that defendants' course of conduct presents a multitude of common legal and factual issues amenable to class-wide disposition.

Although the named plaintiffs and proposed class members are trust funds, defendants argue that the individual participants and beneficiaries cannot be ignored because plaintiffs cannot avoid proof about individual fund participants (*i.e.* individual tobacco consumers) to prove their claims. The Complaint itself refers to the participants and beneficiaries numerous times as the target of defendants' alleged conduct. Thus, defendants believe that plaintiffs' claims necessarily require an individualized inquiry beyond the trust funds themselves into the knowledge and conduct of the participants and beneficiaries. Plaintiffs, on the other hand, maintain that this case is "not for compensation for personal injuries suffered by smokers. It is a separate injury to Plaintiffs' property and is wholly distinct from the harms suffered by individuals." Complaint, ¶ 230.

This court has some difficulty separating plaintiffs' claims from the injuries suffered by their nicotine-addicted, tobacco-consuming participants and beneficiaries. Individual plaintiffs may sue tobacco companies and others for personal injuries suffered due to smoking. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). However, the cost of litigating such cases is often prohibitive given the amount of the potential recovery. To avoid the difficulties of individual smoker cases, classes of smokers have attempted to join their claims together but with mixed results. Although class suits have been permitted by some state courts, *R.J. Reynolds Tobacco Co. v. Engle,* 672 So.2d 39 (Fla. App.), *rev. denied,* 682 So.2d 1100 (Fla.1996), federal courts have rejected both a nation-

---

6. Although that case is similar to this case, the claims are not identical.

7. However, the parties are warned that de-certification may be considered appropriate at a later point in this litigation.

wide class of smokers, *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir.1996), as well as classes of smokers residing in particular states, *Arch v. The American Tobacco Co., Inc.*, 175 F.R.D. 469 (E.D.Pa.1997), due to the predominance of individual issues over common issues.

Faced with those obstacles, the 40 attorney generals of various states and Puerto Rico, as well as cities and counties, have sought recovery of Medicaid and state employee health fund payments premised on violations of various state laws. The threat of these cases finally forced the tobacco industry into the political arena with discussions of settlement and proposed legislation by Congress. Seeing a parallel to those cases, various third-party payors, including trust funds such as those in this case, have joined the fray by also filing suit to recover the cost of treating tobacco-related diseases. Some cases have been filed as class actions, including this suit.

The trust funds in this case provide comprehensive health care benefits to participants who are employed under various collective bargaining agreements and to their dependents and to retirees. Complaint, ¶ 6. These funds are either self-insured or purchase insurance from insurance companies and pay for the health care benefits or insurance premiums from contributions made by the participants and their employers. The funds presumably set the amount of those contributions based upon some experience rating, just as an insurance company sets the amount of its insurance premiums. In other words, the funds provide a large pool for distributing the cost of health care, just as does an insurance company.

This court sees very little difference between the plaintiffs in this case and an insurance company that has paid the medical costs to treat injuries of its insured in the form of addiction, cancer and other tobacco-related illnesses and diseases. If an insured files suit and obtains a recovery against a tobacco company for a tobacco-related illness, then the insurer would have a lien against the recovery for the amount of costs it incurred for treatment. As a result, the insurer would be fully compensated. Instead of waiting to obtain a recovery in individual cases brought by individual smokers, the trust funds seek a faster way to achieve the same end by suing the tobacco industry directly. However, defendants presumably will argue that the trust funds have not really suffered any injury. Instead, the injury has been suffered by the individual participants and employers in the form of higher contributions to the trust funds to pay for the medical care for tobacco-related illnesses.[8]

Despite these seemingly compelling arguments, this court finds that certification is appropriate at this juncture. The parties' disagreement over whether the claims asserted here belong to the trust funds themselves, or to their individual participants and beneficiaries, can be resolved only by examining the merits of plaintiffs' claims. However, this court is prohibited from examining the merits of plaintiffs' claims when considering their motion for class certification: "We find nothing in either the language or history of [FRCP] 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Thus, for purposes of the present motions, this court must assume that plaintiffs' claims properly belong to the trust funds rather than to those funds' individual participants and beneficiaries. This aspect of *Eisen* robs many of defendants' arguments against class certification of their vigor.

Moreover, when the pleadings in this case are viewed in this light, it becomes obvious that this case satisfies every requirement for class certification and that plaintiffs' motion should therefore be granted. As explained below, this court finds that the proposed class action easily satisfies the requirements

---

**8.** Unlike the trust funds in *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F.Supp.2d 277, 289 (S.D.N.Y.1998), plaintiffs here do not appear to allege any "harm to [their] infrastructure and financial stability caused by defendants' alleged attempts to deceive." Such claims likely would not raise the same concerns because they would involve costs borne only by the trust funds and recoverable only by the trust funds.

of FRCP 23(a). Additionally, disentangled from defendants' arguments that the claims at issue here really belong to plaintiffs' individual participants and beneficiaries, this case also clearly meets the requirements of FRCP 23(b)(3). Accordingly, as discussed below, this court recommends certification of this case as a class action.

## II. *Motion to Require a Class Action Trial Plan*

■ Defendants assert that plaintiffs' failure to present a detailed class action trial plan prevents this court from performing the rigorous analysis required under FRCP 23 and requires denial of plaintiffs' motion to certify a class. Alternatively, defendants assert that plaintiffs should be required to present a detailed class action trial plan, to which they should be allowed to respond, before this court decides plaintiffs' motion to certify.

Defendants base their motion on their assertion that this case involves highly individual fact questions on fund-specific issues such as liability, causation, defenses (including comparative fault, statutes of limitation, and mitigation), and damages. Specifically, defendants assert that plaintiffs have failed to explain: (1) which elements of their causes of action can be established for all putative class members based solely on evidence from the named plaintiffs; (2) how they intend to rebut at trial defenses of comparative negligence, failure to mitigate harm, and statutes of limitations without presenting fund-specific proof relating to the knowledge and acts or omissions of each fund and its trustees; and (3) how damages can be calculated without fund-specific proof.

Defendants rely heavily on three cases involving attempts to certify nationwide class action claims. In *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) the district court certified, for settlement purposes only, a class of persons adversely affected by past exposure to asbestos products. The complaint identified nine lead plaintiffs who were designated, along with their respective families, as representatives of a class of persons who had not filed suit but (1) who had been exposed to

asbestos, or (2) whose spouse or family member had been so exposed. The Supreme Court reversed, holding that the requirements of class certification were not met, noting that the class "potentially encompasses hundreds of thousands, perhaps millions, of individuals." *Id.* at 2237.

Similarly, *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996), involved conditional certification of a nationwide class and subclass in a products liability case against the manufacturer of a drug used for the treatment of epilepsy. The district court's certification order was "brief and conclusory" and "entered with the express hope on the part of the district judge of encouraging settlement, and to trigger a ruling from [the Ninth Circuit] on the more general issue of the viability of class certification." *Id.* at 1234. The Ninth Circuit reversed, holding that the district court's complete failure to explain why common issues predominated over individual issues was an abuse of discretion, and noting that there had been no showing as to how a class trial could be conducted. *Id.*

*Castano, supra,* involved the "largest class action ever attempted in federal court" and consisted of claims by all nicotine-dependent persons in the United States since 1943. *Castano,* 84 F.3d at 738. The *Castano* plaintiffs conceded that addiction would have to be proven by each class member. *Id.* The district court certified a class under FRCP 23(b)(3), dividing the issues into four categories: (1) core liability; (2) injury-in-fact, proximate cause, reliance and affirmative defenses; (3) compensatory damages; and (4) punitive damages. *Id.* at 739. On appeal, the Fifth Circuit found that the district court erred by failing to consider how variations in state laws would affect predominance, noting that, in multi-state class actions, "variations in state law may swamp any common issues and defeat predominance." *Id.* at 740–41 (citations omitted). The court also found that the district court erred by failing to include consideration of how a trial on the merits would be conducted. *Id.* at 740.

In contrast to *Amchem, Valentino,* and *Castano,* this case does not involve a nationwide, mass tort, individual personal injury

class action. Instead, plaintiffs' proposed class involves only 50 class members all located in Oregon pursuing claims based exclusively on federal and Oregon law. Moreover, in this case, plaintiffs propose to prove their case by using statistical models and expert testimony rather than an individual-by-individual assessment of nicotine addiction and tobacco-related injury. Consequently, this case does not raise the same case management concerns as *Amchem, Valentino,* and *Castano.*

Defendants assert that Oregon law does not necessarily control, given that the trust funds provide benefits to participants and beneficiaries residing outside Oregon. However, defendants' arguments are based on a premise which has not been tested by dispositive motions. As with defendants' argument that the claims in this case belong not to the trust funds but to their participants and beneficiaries, this argument regarding which law controls does not provide a basis for denying class certification at this early stage prior to dispositive motions.

Thus, this court concludes that plaintiffs need not present a detailed class action trial plan in order to proceed with their motion to certify.

### III. *Motion to Certify a Class*

#### A. *Legal Standard*

■ The principal purpose of a class action is "the efficiency and economy of litigation." *American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). To that end, FRCP 23(a) provides that the members of a class may sue or be sued as representative parties on behalf of an entire class only if:

(1) The class is so numerous joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The focus of FRCP 23(a) is the number of potential class members, and the degree to which the interests of the members of the

class align with the interests of absent class members. However, meeting the numerosity, commonality, typicality, and adequacy-of-representation requirements of FRCP 23(a) is only the first set of requirements for obtaining class certification. In order for a suit to proceed as a class action, it must also fall into one of the three categories described in FRCP 23(b). Here, plaintiffs seek certification under FRCP 23(b)(3) which requires a showing that:

questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ The burden is upon plaintiff to show compliance with FRCP 23. *In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 854 (9th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983) ("*Dalkon Shield*"). "A class may only be certified if we are 'satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir.1992), citing *General Tele. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("*Falcon*"). A class may be certified as to one or more claims without certifying the entire complaint. FRCP 23(c)(4).

#### B. *Analysis and Ruling*

##### 1. *FRCP 23(a)(1)—Numerosity—Practicality of Joinder*

■ "This district has held that, as a 'rough rule of thumb,' approximately forty members is sufficient to satisfy the numerosity requirement." *Wilcox Dev. Co. v. First Interstate Bank of Oregon, N.A.,* 97 F.R.D. 440, 443 (D.Or.1983), citing *Williams v. Stevenson,* No. 76–311 (D.Or. Feb. 27, 1979). Moreover, the Ninth Circuit has indicated that, with a class as few as 39 members, it would be "inclined to find the numerosity requirement ... satisfied solely on the basis of the number of ascertained class members." *Jordan v. Los Angeles Cty.,* 669 F.2d

1311, 1319 (9th Cir.1982), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). If the number of class members alone is insufficient to show the impracticability of joinder, "factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought [are] considered." *Id.* (citation omitted).

■ Defendants assert that plaintiffs fail to show that joinder is impracticable in this case because the funds are all centrally located in Oregon, have claims averaging several million dollars, and seek injunctive relief. However, it is undisputed that the proposed class consists of approximately 50 class members. Joinder of this number of class members is impracticable without reference to the other factors identified in *Jordan.* Consequently, plaintiffs meet the numerosity requirement of FRCP 23(a).

### 2. *FRCP 23(a)(2)—Common Questions of Law or Fact*

The remaining three requirements of FRCP 23(a) are the commonality, typicality, and adequacy-of-representation requirements, which all focus to one degree or another on "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon, supra,* 457 U.S. at 157, n. 13, 102 S.Ct. 2364 (noting that these three requirements of FRCP 23(a) "tend to merge.").

■ Plaintiffs' proposed class action clearly satisfies the commonality requirement. FRCP 23(a)(2) does not require that every question of law or fact be common to every member of the class. Instead, "there need be only a single issue common to all members of the class." H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 3.10, pp. 48–51 (3d ed. 1992). Thus, "[w]hen the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of

action will be common to all of the persons affected." *Id.* at 51; *see also Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) (employing a "common sense approach" and finding the commonality requirement satisfied where the class was "united by a common interest in determining whether a defendants' course of conduct is in its broad outlines actionable.").

■ Plaintiffs' claims in this case all revolve around defendants' alleged course of wrongful conduct of: (1) suppressing information on the addictive nature of nicotine and the adverse health consequences of tobacco use; (2) manipulating the nicotine content of, and controlling the release of nicotine in, their products; (3) conspiring to eliminate the development of safer, alternative nicotine delivery products; (4) misleading the public concerning the amounts of tar and nicotine ingested by smoking "low-tar" or "light" cigarettes; and (5) marketing their tobacco products to children and misrepresenting whether they were doing so.

Defendants respond that this case involves numerous liability, defense, and damages issues requiring individual proof by each fund. However, those issues do not defeat plaintiffs' showing of commonality, but raise the specter that common issues may not predominate under FRCP 23(b)(3), and are best addressed under that prong of the analysis. *See Amchem, supra,* 117 S.Ct. at 2243 (noting that for FRCP 23(b)(3) classes, the test of commonality is subsumed under or superseded by the more stringent predominance inquiry).

### 3. *FRCP 23(a)(3)—Typicality*

■ "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon, supra,* 976 F.2d at 508, citing *Weinberger v. Thornton,* 114 F.R.D. 599, 603 (S.D.Cal.1986). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged con-

duct." *Sprague v. General Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998), *petition for cert. filed* (Apr. 06, 1998) (NO. 97–1639), quoting *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996). Consequently, typicality " 'refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.' " *Id.* "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims," *General Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), and is satisfied where "other [class] members have the same or [a] similar injury [caused by] the same course of conduct." *Freedman v. Louisiana–Pacific Corp.,* 922 F.Supp. 377, 399 (D.Or.1996), citing *Welling v. Alexy,* 155 F.R.D. 654, 657 (N.D.Cal.1994), quoting *Hanon,* 976 F.2d at 508.

█ Defendants primarily assert that the named plaintiffs are not typical of all members of the class because they are unable to demonstrate detrimental reliance on defendants' alleged misrepresentations and non-disclosures, which is an element of plaintiffs' claims for unlawful trade practices (Seventh Claim), fraudulent misrepresentation and concealment (Eighth Claim), negligence (Tenth Claim), and civil conspiracy (Eleventh Claim). However, to the extent plaintiffs relied on public knowledge, the named plaintiffs are typical. Moreover, *Eisen* prohibits an inquiry into the merits of a suit when considering requests for class certification and lack of reliance clearly raises such concerns. *In re Pizza Time Theatre Securities Litigation,* 112 F.R.D. 15, 22 (N.D.Cal.1986) ("The Court finds that although lack of reliance may be a defense, that goes to the merits of the case and cannot be considered in a certification motion.") (citation omitted).

Defendants also argue that the typicality requirement is not met because each of the funds exercises its fiduciary responsibilities in unique ways. Specifically, defendants assert that each of the named plaintiffs has excluded treatment for tobacco dependence or addiction from their addiction or chemical dependency treatment coverage. Moreover, defendants assert that differences in the way the funds provide health care coverage defeat typicality, noting that the majority of the named plaintiffs are self-insured, whereas the remaining members of the proposed class purchase their insurance or health care by paying premiums to non-party health insurers and HMOs. According to defendants, this difference may affect liability issues (participation in the market for antitrust purpose, definition of injury, damages, standing, real party in interest) and may require third-party claims.

Differences in the way each trust fund covers the cost of the health care benefits it provides and differences in the specific types of coverage provided may well affect the amount of damages recoverable by a particular fund. However, these differences do not indicate that the *claims* of the named plaintiffs are not typical of the putative class members. Each proposed class member is a jointly-administered collectively bargained-for Oregon health and welfare trust fund bound by a fiduciary duty to conserve its assets and provide maximum health benefits. Each fund seeks recovery of sums it expended to provide health care for tobacco-related medical problems. Each fund alleges the same claims and alleges that the source of its injury is defendants' conspiratorial conduct. This court is satisfied that the claims of the putative class members are fairly encompassed by the named plaintiff's claims such that the typicality requirement is satisfied.

### 4. *FRCP 23(a)(4)—Adequate Representation*

█ FRCP 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. A court must "carefully scrutinize the adequacy of representation in all class actions." *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975) (citation omitted). "Adequacy of representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Dalkon Shield, supra,* 693 F.2d at 855

(citations omitted).[9] These requirements ensure that the due process rights of absent class members, who are bound by the judgment in the suit, are protected. *Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir.1994).

Defendants do not argue that plaintiffs' attorneys are insufficiently qualified to prosecute this suit and the materials submitted by plaintiffs on this point demonstrate just the opposite. Affidavit of Steve Larson in Support of Plaintiffs' Motion for Class Certification, ¶¶ 3–6. Moreover, nothing in the record indicates any potential antagonism between the named plaintiffs and absent class members, or that the suit is collusive. Therefore, this court finds that the representative parties will fairly and adequately protect the interests of the class as required by FRCP 23(a)(4).

In summary, this court concludes that plaintiffs' proposed class action satisfies all the requirements of FRCP 23(a).

### 5. *FRCP 23(b)(3)—Predominance of Common Issues & Superiority of Class Action*

In order to have this case certified for class action treatment, plaintiffs also must satisfy the predominance and superiority requirements of FRCP 23(b)(3) by showing that common questions of law or fact predominate and that a class action is superior to other available methods for fair and efficient adjudication. Judicial economy and fairness are the focus of the predominance and superiority requirements. *Amchem, supra,* 117 S.Ct. at 2249, *Valentino, supra,* 97 F.3d at 1234–35. "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee [for revision of FRCP 23] sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . .

uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Amchem,* 117 S.Ct. at 2246 (citation omitted). To that end, a decision on predominance and superiority must be guided by consideration of: (1) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action. FRCP 23(b)(3)(A–D).

As noted above, defendants contend that a multitude of issues in this case will require individualized proof and therefore prevent a finding that common issues predominate. Defendants raise these same arguments to support their assertion that plaintiffs have failed to meet the predominance and superiority requirements. Primarily, defendants argue that individual issues of justifiable reliance preclude findings that common issues predominate and that a class action is superior. According to defendants, plaintiffs' claims for fraud, civil conspiracy, unlawful trade practices, and negligence are each partly dependent on a showing that plaintiffs detrimentally relied on defendants' misrepresentations or nondisclosures. Specifically, defendants assert that these claims turn on what each fund (and its respective trustees) knew about the health risks of using tobacco products, the source of that information, and the effect that information had on each trust fund's conduct and will require proof of circumstances surrounding numerous decisions by each trust fund. Moreover, defendants assert that individualized proof will be re-

---

**9.** In the context of shareholder derivative actions, the Ninth Circuit has identified eight factors considered in determining whether class members are adequately represented: (1) indications that the plaintiff is not the true party in interest; (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (3) the degree of control exercised by the attorneys over the litigation; (4) the degree of support received by the plaintiff from other shareholders; (5) the lack of any personal commitment to the action on the part of the representative plaintiff, (6) the remedy sought by plaintiff in the derivative action; (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and (8) plaintiff's vindictiveness toward the defendants. *Larson v. Dumke,* 900 F.2d 1363, 1367 (9th Cir.1990), *cert. denied,* 498 U.S. 1012, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990). These factors reflect the same concerns as do the factors identified in *Dalkon Shield.*

quired to show that any alleged reliance was justifiable and to show the specific harms caused by any justifiable reliance.

The Ninth Circuit has "emphasize[d] that the defense of non-reliance is not a basis for denial of class certification." *Hanon, supra,* 976 F.2d at 509 (citations omitted). However, defendants also assert that other issues requiring individualized proof militate against a finding that common issues predominate. Those issues are: (1) proximate causation; (2) running of the statutes of limitations; and (3) mitigation of damages. Defendants assert that resolution of these issues will require individualized proof concerning each trust fund's knowledge of the health care risks associated with using tobacco products, the point in time that knowledge was acquired, and what the individual funds did in response to that information.

Conceding for purposes of these motions that some individualized proof may be required, plaintiffs' showing of predominance and superiority is not defeated. The issue is the cohesiveness of the proposed class and whether class presentation of their claims will be efficient and fair. While the nature of the damages is quite different, the form of plaintiffs' case is akin to a class action involving allegations of securities fraud based on a fraud-on-the-market theory. Plaintiffs assert that defendants duped their participants and beneficiaries into dependency on tobacco products by squelching the dissemination of public information about the addictive nature of tobacco and the adverse health effects of tobacco consumption. Plaintiffs propose to prove their case by relying on statistical modeling and expert testimony. A brief consideration of the parties' competing arguments reveals that both the predominance and superiority requirements are met in this case.

Defendants' argument with respect to individualized inquiries concerning plaintiffs' knowledge is merely the flip side of plaintiffs' argument. Plaintiffs argue that common issues predominate and a class action would be superior because the relevant inquiry is *defendants' conduct* (of allegedly concealing information), while defendants argue that the relevant inquiry is *plaintiffs' knowledge* (of the substance of the allegedly concealed information). The answer to the question of whether common issues predominate and whether a class action is a superior method of resolving this case lies in the answer to the question of which parties' conduct is most central to this case.

As is evident from the litany of common issues which are amenable to class treatment identified by plaintiffs (Plaintiffs' Reply Memorandum in Support of Class Certification, pp. 22 – 24), it is *defendants' conduct* that is at the heart of this dispute. Every claim centers on defendants' alleged conspiratorial conduct and the effect of that conduct (*i.e.* the withholding of information) on the mix of information available to the public at large, as well as on competition in the marketplace for defendants' products. Moreover, while some individualized proof of plaintiffs' knowledge concerning the health hazards of the use of tobacco products may be relevant to the issues identified by defendants, plaintiffs' claims include additional allegations concerning defendants' conduct on which that proof will have no bearing, such as defendants alleged practices of manipulating the amount of nicotine in their tobacco products, targeting children in the marketing of their products, and conspiring to eliminate competition amongst themselves and from other companies. *See,* Complaint, ¶¶ 221, 239, 257–60, 275, 287, 299, 308, and 343.

Defendants contend that individual cases can easily be managed by pretrial consolidation and orderly trial procedures. However, that argument ignores the crucial role that proof of defendants' conspiratorial conduct plays in proving each claim by each trust fund. Absent such proof, plaintiffs' claims founder. That proof is costly to obtain and present in court. Absent class certification, 50 different juries must consider the same evidence on the same issue. As claims that misinformation misguided investors in the securities market are amenable to class treatment, so are claims by plaintiffs that defendants conspired to addict consumers to their tobacco products. Balanced against proof of the few individual issues identified by defendants, the common issues subject to common proof clearly predominate.

Moreover, the factors of FRCP 23(b)(3)(A–D) favor plaintiffs. The individual members of the proposed class have little or no interest in individually controlling the prosecution of this action. To the contrary, the premise of the claims in this case is that the trust funds were injured by the same course of conduct. To the degree differences exist as to fund administration, those differences affect only the calculation of damages and may be handled with a straightforward formula. While a multitude of other suits are pending which involve the same or similar allegations, none of those suits involve the named plaintiffs or putative class members involved here. This appears to be the only forum in which plaintiffs' claims may be concentrated. And this court is not persuaded that management of this class action will differ in any significant respect from management of a securities fraud class action.

This court is also persuaded that class action treatment is appropriate based on the opinions expressed in cases endorsed or decided by the Ninth Circuit. In *Valentino, supra,* the Ninth Circuit expressly rejected the manufacturer's suggestion that class certification of products liability suits should be prohibited and professed sympathy with the Sixth Circuit's approach to class certification issues. *Valentino,* 97 F.3d at 1233, citing *In re American Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir.1996) and *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188 (6th Cir.1988).

In *American Med. Sys., Inc.,* the Sixth Circuit decertified a nationwide class involving ten different models of penile implants that were implanted over a twenty-two year period. The court was clearly troubled by the individual inquiries involved in evaluating plaintiffs' claims:

> Proofs as to strict liability, negligence, failure to warn, breach of express and implied warranties will also vary from plaintiff to plaintiff because complications with [an implant] may be due to a variety of factors, including surgical error, improper use of the device, anatomical incompatibility, infection, device malfunction, or psychological problems. Furthermore, each plaintiff's urologist would also be required to testify to determine what oral and written

statements were made to the physician, and what he in turn told the patient, as well as to issues of reliance, causation and damages.

\* \* \*

The amended complaint reflects that the plaintiffs received different models and have different complaints regarding each of those models.

\* \* \*

Although *Sterling* was a toxic tort case in which the court held that certification was proper, we think the court's remarks are instructive here. Unlike a mass tort action arising out of a single accident or single course of conduct, in medical device products liability litigation of the same sort involved here the factual and legal issues often do differ dramatically from individual to individual because there is no common cause of injury.

75 F.3d at 1081–84 (citations and footnotes omitted).

This same concern was fatal to plaintiffs' request for class certification in *Dalkon Shield:*

> The district court correctly held that each California case contains common issues "of design, testing, manufacturing, labeling and inspection of the Dalkon Shields." But on the issues of negligence, strict products liability, adequacy of warnings at relevant time periods, breach of warranty, fraud and conspiracy, commonality begins to be obscured by individual case histories. Different questions of law and fact could apply to various plaintiffs in the California class because of different representations and warnings made to each woman, different injuries suffered, and different defenses available to Robins. The commonality requirement of Rule 23(a)(2) is not, of itself, insurmountable, but problems of commonality merge into problems of management.

693 F.2d at 854.

This case differs significantly from cases involving products liability claims concerning distinct medical devices. In those actions,

the product is typically prescribed for an individual patient based on that individual's particular health needs. A doctor examines the patient, assesses the patient's medical needs, informs the patient of the alternative courses of treatment, and ultimately treats the patient based on the patient's informed decisions. There are frequently multiple designs and models of the device available, such that an informed choice must be made as to which design or model is appropriate to that patient. Additionally, the alleged injury may differ significantly between plaintiffs based on individual medical histories.

In contrast, plaintiffs' claims in this case concern defendants' alleged conspiracy to suppress information about the addictive nature of a single, fungible, identifiable drug contained in defendants' products (nicotine), as well as defendants' alleged conspiracy to suppress information about the adverse health consequences of consuming products containing a particular component (tobacco). Unlike the situation in *American Med. Systems and Dalkon Shield,* plaintiffs here allege that defendants' tobacco products cause across-the-board addiction and have across-the-board · adverse health consequences. Complaint, ¶¶ 29–34 (adverse health effects of smoking), 35–37 (adverse health effects of smokeless tobacco), 137–38 (addictive nature of nicotine). Defendants' alleged knowledge of nicotine's addictive nature, and the adverse health consequences of consuming tobacco products, and alleged conspiracy to suppress this information forms the basis for liability on each of plaintiffs' claims. This is precisely the type of situation that the Sixth Circuit found was amenable to class treatment:

> [W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy.

*Sterling,* 855 F.2d at 1197 (cited with approval in *Valentino* ).

This court does not dispute that some individual proof may be required in this case, nor does it dispute that some case management concerns may arise.[10] Despite these concerns, this court is convinced that the issues revolving around defendants' alleged course of conspiratorial conduct clearly predominate and that the superior method for handling this dispute is to certify this case as a class action.

### 6. *Immaturity of Plaintiffs' Claims*

Citing *Castano, supra,* defendants also argue that certification is inappropriate because plaintiffs' case is immature. Plaintiffs counter that this argument was flatly rejected by Judge Dwyer and that, in any event, the claims at issue here have been tested through motions filed in the state Medicaid cases in Minnesota and Oregon. In addition, plaintiffs argue that defendants' assertions ·that the claims in this case are "immature" is undercut by the fact that defendants have settled three of the state Medicaid cases for billions of dollars.

The crux of defendants' argument is that plaintiffs' theories in this case are untested and analogous to claims that have been previously dismissed before in trial courts across the country. Given the different types of plaintiffs, the prior legal rulings in the state Medicaid cases may not be persuasive. In any event, this court is mindful of *Eisen's* admonition that examination of the merits is inappropriate in the context of deciding a motion to certify a class. Defendants have recently filed motions for judgment on the pleadings, currently set for argument before this court in early August, and discovery on the merits has been stayed pending resolution of those motions. At that time, this court will determine whether plaintiffs' claims are fatally flawed. Until that time, and as discussed above, this court finds that class action treatment of plaintiffs' claims is appropriate.

### RECOMMENDATIONS

For the above stated reasons, defendants' Motion to Require Plaintiffs to Present a

---

10. These concerns include the avoidance of multiple mini-trials that may run afoul of the Seventh Amendment to the United States Constitu-
tion. However, it is too early in this case to deny class certification on that basis alone.

Class Action Trial Plan and to Allow a Response by Defendants (docket # 110) should be DENIED and Plaintiffs' Motion for Class Certification (docket # 38) should be GRANTED.

### *SCHEDULING ORDER*

Objections to these Findings and Recommendations, if any, are due June 23, 1998. If no objections are filed, then the Findings and Recommendation(s) will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than July 13, 1998. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.