**David PHELPS and Max Lugauer III, Individually and On Behalf of All Others Similarly Situation, Plaintiffs,**

v.

**3PD, INC., a Georgia corporation, Defendant.**

**No. CV–08–387–HU.**

United States District Court, D. Oregon.

Sept. 30, 2009.

Steve D. Larson, David F. Rees, Stoll Stoll Berne Lokting & Shlachter P.C., Portland, OR, Robert C. Schubert, Miranda P. Kolbe, Schubert & Reed LLP, San Francisco, CA, for Plaintiffs.

John A. Anderson, Anderson & Yamada, P.C., Portland, OR, James H. Hanson, Scopelitis, Garvin, Light, Hanson & Feary, P.C., Indianapolis, IN, Adam C. Smedstad, Scopelitis, Garvin, Light, Hanson & Feary, P.C., Chicago, IL, for Defendant.

## OPINION & ORDER

HUBEL, United States Magistrate Judge:

Plaintiffs David Phelps and Max Lugauer bring wage and other claims against defendant 3PD, Inc., based on the allegation that defendant purposefully misclassified plaintiffs, and a class of similarly situated individuals who provide home delivery services for defendant, as "independent contractors," when in fact, according to plaintiffs, they were defendant's employees.

Plaintiffs move for certification of a class on certain claims under Federal Rule of Civil Procedure 23. They also seek appointment of Phelps and Lugauer as class representatives, and appointment of the San Francisco law firm of Schubert Jonckheer Kolbe & Kralowec LLP, and local law firm Stoll Stoll Berne Lokting & Shlachter PC, as class counsel. All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant the motion.

## BACKGROUND

Plaintiffs are former delivery drivers for defendant and were classified as independent contractors during their tenure. Plaintiffs bring seven claims for relief. An element of each claim, although not the only element, is the issue of whether plaintiffs were properly classified by defendant as independent contractors or were misclassified because the relationship was actually one of employee-employer. It appears that the majority of defendant's home delivery business in Oregon was performing deliveries for Home Depot stores. Additional facts are discussed below.

## I. Claims

Plaintiffs bring the following claims:

(1) Illegal deductions from wages under Oregon Revised Statute § (O.R.S.) 652.610. Plaintiffs allege they were employees under O.R.S. 652.310. Plaintiffs contend that defendant deducted vehicle expenses, cargo claims, and insurance claims from their pay in violation of O.R.S. 652.610 because plaintiffs did not expressly and freely give written consent to such deductions and the deductions were not made in response to a valid wage assignment or deduction order. Plaintiffs further allege that the deductions were not made for their benefit and defendant did not provide plaintiffs with advance notice of such amounts, reasons, or documentation to justify the deductions. Am. Compl. at ¶¶ 63–67.

(2) Rescission of Agreements. Plaintiffs contend that the contracts signed by each driver purporting to establish an independent contractor relationship, are void as against public policy and thus unenforceable because they fail to recognize the proper employment status of plaintiffs and therefore, deny them the legally cognizable benefits of employment. Am. Compl. at ¶¶ 68–73.

(3) Unjust enrichment/quantum meruit. Plaintiffs contend that by misclassifying them as independent contractors, and by improperly requiring them to pay defendant's ordinary business expenses, defendant has been unjustly enriched. Plaintiffs contend they are entitled to restitution of all the business expenses they were required by defendant to bear, and for the fair value of the services they provided as employees. Am. Compl. at ¶¶ 74–76.

(4) Declaratory Relief. Plaintiffs contend that an actual controversy has arisen between plaintiffs/class members and defendant relating to (a) whether defendant unlawfully misclassified plaintiffs and the members of the class as independent contractors and thus denied them the common benefits of employee status such as wages, holiday pay, workers' compensation, unemployment insurance, income tax withholding, and meal, break, and rest periods; (b) whether defendant has unlawfully failed to timely pay benefits and compensation owing to plaintiffs/class members whose employment with defendant ended; (c) what amounts plaintiffs and the class members are entitled to receive in compensation and benefits; (d) what amounts plaintiffs and the class members are entitled to receive in interest on unpaid compensation due and owing; and (e) what amounts plaintiffs and the class members are entitled to receive from defendant in statutory penalties and

interest. Plaintiffs seek entry of a declaratory judgment which declares defendant's practices unlawful and which provides for recovery of all sums determined by the court to be owed by defendant to plaintiff and the class members. Am. Compl. at ¶¶ 77–79.

(5) Injunctive Relief. Plaintiffs contend that defendant will continue to misclassify plaintiffs and the class members as independent contractors and unlawfully deny them the common benefits of employee status unless enjoined from doing so. They allege they have no adequate remedy at law for defendant's continued misclassification and unlawful refusal to pay all compensation and benefits. They further assert that they have a reasonable fear that defendant will retaliate against class members for attempting to enforce their rights under Oregon law. Thus, they seek permanent injunctive relief enjoining defendant from engaging in the unlawful practices alleged. Am. Compl. at ¶¶ 80–84.

(6) Penalty Wages. Plaintiffs allege that as a result of the violations of O.R.S. 652.610 as asserted in plaintiffs' first claim, defendant has violated O.R.S. 652.140 by failing to timely pay wages owed to terminated employees, and thus, defendant owes penalty wages under O.R.S. 652.150. Am. Compl. at ¶¶ 85–88.

(7) Fraud. Plaintiffs allege that defendant knew, or recklessly disregarded, the improper designation of its drivers as independent contractors in the contracts with its drivers. Plaintiffs contend that through the driver agreements and other actions as alleged in the Amended Complaint, defendant intentionally or recklessly misled plaintiffs and the members of the class as to their employment status for the purpose of realizing unjust profits from their work and/or to avoid paying for its own operating costs and payroll taxes owed to the state and federal government. Plaintiffs assert that defendant knew that the material representations made to plaintiffs and class members in the agreements concerning their employment status, and the concealment and/or non-disclosure of material facts from plaintiffs and class members concerning their employment status and their corresponding obligation to assume responsibility for all of their "own" employment-related expenses, including, but not limited to, purchasing or leasing, operating and paying to maintain expensive trucks, were false and fraudulent. Plaintiffs contend that defendant intended to and did induce plaintiffs and the class members to reasonably and justifiably rely to their detriment on the false and fraudulent representations made to them by defendant in the agreements concerning their employment status and obligation to assume responsibility for employment-related expenses, including but not limited to, purchasing or leasing, operating and maintaining expensive trucks, and that plaintiffs suffered damage as a direct and proximate result. Am. Compl. at ¶¶ 89–93.

II. The Motion

Plaintiffs seek certification of a class with respect to their claims for illegal deductions from wages, rescission, unjust enrichment, and fraud, defined as follows:

All individuals who (1) entered into a contract with 3PD to perform home delivery services either on his or her own behalf or on behalf of an entity, and (2) performed such home delivery services for 3PD in the State of Oregon during the period March 26, 2002 through the present (the "Class Period").

Pltfs' Mtn at p. 2.

They further seek certification of a subclass with respect to their penalty wage claim, defined as follows:

All individuals who (1) entered into a contract with 3PD to perform home delivery services either on his or her own behalf or on behalf of an entity, (2) personally performed such home delivery services for 3PD in the State of Oregon during the period March 26, 2002 through the present, and (3) whose employment with 3PD was terminated during the period March 26, 2002 through the present.

*Id.*

As noted above, plaintiffs seek appointment of Phelps and Lugauer as class representatives, and further seek appointment of current counsel as class counsel.

## STANDARDS

A suit may go forward as a class action if:

(1) [T]he class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition to satisfying the four Rule 23(a) criteria, a class action may be maintained only if one of the Rule 23(b) criteria is met. Fed.R.Civ.P. 23(b). Here, plaintiffs rely on Rule 23(b)(3), discussed below.[1]

■ The decision to grant or to deny class certification is within the trial court's discretion. *Armstrong v. Davis*, 275 F.3d 849, 871, n. 28 (9th Cir.2001) (Rule 23 "provides district courts with broad discretion to determine whether a class should be certified[.]"). It is plaintiffs' burden to establish compliance with Rule 23. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir.2007) (party seeking class certification bears burden of demonstrating that Rule 23 criteria are met).

A class may be certified only if the court is satisfied "after a rigorous analysis that the prerequisites of Rule 23(a) have been satisfied." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992) (internal quotation omitted). A class may be certified as to one or more claims without certifying all of the claims alleged in the complaint. Fed.R.Civ.P. 23(c)(4).

■ For purposes of ruling on a motion to certify a class, the court takes the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir.1982). However, the court is also required to consider the nature

and range of proof necessary to establish those allegations. *Id.*

■ The determination of class certification does not require or permit a preliminary inquiry into the merits. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). An extensive evidentiary showing by the plaintiff is not required as long as the court has sufficient material before it to determine the nature of the allegations and to rule on compliance with the requirements of Rule 23. *Id.*

## DISCUSSION

### I. Choice of Law

Defendant argues that based on a choice of law provision in the contracts signed by its drivers, Georgia law applies to any claim arising out of the contracts. Plaintiffs make several arguments in opposition to the application of Georgia law, including that the choice of law provision is very narrow, none of plaintiffs' claims arise out of the contracts, the determination of who is and is not an employee cannot be divorced from the context in which that determination is to be applied, and that the application of Georgia law to the question of whether the drivers are employees or independent contractors would violate fundamental Oregon policies.

■ I do not resolve the choice of law dispute at this juncture. Under Oregon law, courts generally use a common law "right to control" test in determining the status of a worker. *Perri v. Certified Languages Int'l, LLC*, 187 Or.App. 76, 82, 66 P.3d 531, 535 (2003). "The principal factors under that test are (1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Id.* No one factor is dispositive; they are to be viewed in their totality. *Id.*

■ Under Georgia law, where the contract of employment clearly denominates the other party as an independent contractor,

---

1. Plaintiffs do not seek class certification of the declaratory and injunctive relief claims and thus, do not rely on Rule 23(b)(2) which allows for the maintenance of a class action upon satisfaction of all four Rule 23(a) criteria and a showing that

"the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

that relationship is presumed to be true unless the evidence shows that the employer assumed the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract. *Larmon v. CCR Enters.*, 285 Ga.App. 594, 595, 647 S.E.2d 306, 307 (2007). If the contract specifies that the employee's status is that of independent contractor, but at the same time provides that he shall be subject to any rules or policies of the employer which may be adopted in the future, no such presumption arises. *Id.* Finally, if the presumption applies, to rebut the presumption that a contract creates an independent contractor relationship, the factfinder must determine whether there was, in fact, a right to control the time, manner, and method of the performance of the work. *Cotton States Mut. Ins. Co. v. Kinzalow*, 280 Ga.App. 397, 402, 634 S.E.2d 172, 176 (2006).

As can be seen from these cases, while Georgia treats the issue slightly differently than Oregon in cases where there is a signed contract acknowledging an independent contractor relationship, facts regarding defendant's right to control plaintiffs and the putative class members are relevant under either state's law. For the purposes of this motion, the issue is whether plaintiffs have common facts to support their claims, which, under either state's law, will involve proof of the "right to control." Thus, because the difference in law is not material to the instant motion, I do not decide the issue.

## II. Rule 23(a)

### A. Numerosity

A class must be "so numerous that joinder of all members is impractical." Fed.R.Civ.P. 23(a)(1). During the class period of March 26, 2002, to present, defendant classified 111 drivers and/or business entities created by drivers, in Oregon, as independent contractors. Exh. 1 to Kolbe Declr. (Deft's Resp. to Interrog. No. 4). Plaintiffs state that at least 92 of the 111 drivers drove pursuant to their own contract with defendant. Plaintiffs also state that at least 70 of the drivers have terminated their employment with defendant. Dotts Declr. at ¶ 6.

■ Cases from the Ninth Circuit and this district support a conclusion that 111 potential class members satisfy the numerosity requirement. *E.g., Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 & n. 10 (9th Cir.1982) (stating inclination "to find the numerosity requirement ... satisfied solely on the basis of the number of ascertained class members, *i.e.*, 39, 64, and 71," and listing thirteen cases in which courts certified classes with fewer than 100 members), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *Oregon Laborers Employer Health & Welfare Trust Fund v. Philip Morris*, 188 F.R.D. 365, 372 (D.Or. 1998) ("This district has held that, as a 'rough rule of thumb,' approximately forty members is sufficient to satisfy the numerosity requirement.") (quoting *Wilcox Dev. Co. v. First Interstate Bank of Oregon, N.A.*, 97 F.R.D. 440, 443 (D.Or.1983)).

Defendant offers no opposing argument on the numerosity issue. Plaintiffs satisfy this Rule 23(a) element.

### B. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The Ninth Circuit explained in a 1998 case that

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).

■ "[T]here need be only a single issue common to all members of the class." *Oregon Laborers–Employers Trust*, 188 F.R.D. at 373 (internal quotation omitted). "[W]hen the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." *Id.* (internal quotation omitted).

Plaintiffs argue that they satisfy the commonality element because of the common proof of defendant's right of control over the drivers. I agree.

Plaintiff has provided a substantial amount of exceptionally detailed evidence regarding the relationship between the drivers and defendant. The evidence includes copies of various contracts used with the drivers, declarations of two of defendant's regional managers, and declarations of nine drivers. Several exhibits are appended to each declaration.

It is important to reiterate that a decision on class certification is not a decision on the merits of the claims. Plaintiffs' evidence demonstrates that the evidence on right to control is overwhelmingly common evidence. However, I do not discuss here many of the details of the evidence plaintiffs submit because the relevant question at this point is whether the evidence plaintiffs will later rely on in support of their claims is or is not common. I need not, and do not, decide what that evidence shows in regard to the merits of each claim.

Plaintiffs provide evidence of a common practice used by regional managers in recruiting potential drivers. Plaintiffs also provide contracts used by defendant with its drivers, both for driving services and for the lease of trucks by defendant to its drivers. Initially, the driving service contracts were called Driver Service Agreements (DSAs), used from March 2002 to September 2006, with drivers entering into these under their own names.

Beginning in September or October 2006, drivers entered into agreements called Independent Contractor Operating Agreements (ICOA). With these, the driver's limited liability company or corporation was the actual party to the contract. In 2006, defendant informed its drivers that it would enter into new contracts, the ICOAs, and would do so only with business entities that had been organized as a corporation or a limited liability company. Defendant further informed its drivers that any who had not already formed a corporation or a limited liability company and who desired to continue to work with defendant, needed to form a business entity to do business with defendant and execute a new ICOA with defendant on behalf of that business entity.

In February 2008, defendant began using a new contract called a Delivery Service Agreement, referred to by plaintiffs in this motion as the "2008 Contract."

All three driving service contracts were standard form contracts and were used with all drivers.

A majority of the drivers also signed vehicle lease and maintenance agreements with defendant, or beginning in 2008, with Cure, defendant's business partner, for a vehicle to be used while driving for defendant. Again, these were standard form contracts. All drivers who entered into such contracts were subject to the same provisions for deductions for lease and maintenance expenses.

Several provisions in the driver agreements, which are common to all drivers, and the lease agreements, which are common to a majority of the drivers, are relevant to the right to control issue. These provisions include standards of service, employment of others to assist the driver, purchase of insurance coverage, preparation of driver logs and other documents, placement of marks or logos on trucks, use of trucks for business other than driving for defendant, and termination.

Common evidence outside of the written agreements is also relevant to the right to control issue. Testimony from the regional managers and several drivers indicates that plaintiffs possess common evidence regarding delivery schedules, uniforms, appearances of vehicles, monitoring of the quality of service provided by the drivers, training of new and secondary drivers, and requirements for vehicle maintenance.

One area where the evidence is not common across all class members is in compensation. Drivers were paid either a flat weekly rate, or a set commission. Drivers who made deliveries for Home Depot "metro" stores, meaning those located in the Portland area, were paid by delivery. "Remote" store drivers were paid a fixed amount each week to provide exclusive service to those Home

Depot stores, regardless of how many deliveries the drivers actually made. Phelps and Lugauer were remote store drivers.

A common question of law underlies all of plaintiffs' claims—whether the drivers are independent contractors or employees. The evidence shows that this question will be answered with largely common evidence relevant to the issue of defendant's right to control the drivers. Again, this is not the time to decide what that common evidence shows. Rather, the issues are whether the evidence is relevant to the right to control, and whether it is common evidence.

The driver contracts and the vehicle lease agreements, both of which have provisions relevant to defendant's right to control, are common evidence. Other common evidence is offered through the testimony of the regional managers and drivers on issues that are also relevant to the right to control such as driver schedules, uniforms, decals, hiring of other drivers, provision and maintenance of equipment, and termination. While the compensation falls into two categories, the evidence as to each category appears to be common.

Based on the evidence in this record, defendant appears to have handled its relationships with its drivers uniformly, with the exception of the two separate compensation methods. Still, the majority of the evidence is common. Plaintiffs meet the commonality requirement.

C. Typicality

 Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). A class representative's claims "are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Judge Jones stated in *Sorenson v. Concannon,* 893 F.Supp. 1469 (D.Or.1994), that "a plaintiff's claim is typical if it arises out of the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* at 1479 (internal quotation omitted).

Plaintiffs argue that they are typical of the class they seek to represent because, like almost every other class member, they signed mandatory boilerplate contracts, were required to be available to make deliveries for defendant six days per week and up to ten hours per day, were required to make all deliveries assigned to them, were required to wear a uniform with defendant's logo on it and to brand their vehicles as defendant saw fit, and were regularly monitored and threatened with termination just like all other class members. Thus, they contend, their claims are typical of those of the class.

Defendant suggests that plaintiffs' claims are not typical because they have no knowledge of certain facts regarding metro store drivers, such as how those drivers had their work scheduled, the number of deliveries they made, and whether the metro drivers were paid more or less than plaintiffs. As noted above, some degree of individuality is tolerated.

In a 1991 opinion, Judge Redden explained that

> [t]he typicality requirement is met when there is a lack of adversity or antagonism between the class representative and absent class members "over the very issue in litigation," and when it is clear the plaintiff will give the action "vigorous representation."

*Steiner v. Tektronix, Inc.,* No. CV–90–587–RE, 1991 WL 57033, at *2 (D.Or. Feb. 7, 1991). Additionally, he explained, "factual variations are not fatal to a proposed class when the claims arise out of the same remedial and legal theory." *Id.* (internal quotation omitted).

 Here, any variation in payment and/or scheduling of deliveries between the remote drivers, like Phelps and Lugauer, and the metro drivers, is insufficient to render Phelps's and Lugauer's claims atypical of those of the putative class.

Defendant also raises an argument about two particular claims. For the fraud claim, defendant contends that Phelps's and Lugauer's claims are not typical because both testified they knew they would be indepen-

558

dent contractors and understood they would be responsible for their own expenses. As I understand the claim, plaintiffs contend that the agreements signed by the drivers contained misrepresentations and omitted other information. As described more fully below in the section discussing Rule 23(b)(3), plaintiffs' awareness of their status and expenses is not relevant to this particular fraud claim. With the claim as presently framed, it is immaterial that each driver understood the agreement to recite that the driver was an independent contractor or that the driver was responsible for his expenses which would be deducted by defendant. I do not find Phelps's and Lugauer's fraud claims to be atypical.

The typicality issue raised by defendant in regard to the O.R.S. 652.610 claim is based on defendant's assertion that plaintiffs authorized the deductions. However, as explained below in the context of the Rule 23(b)(3) discussion, such authorization is irrelevant because the claim, as described by plaintiffs, assumes that each individual driver authorized the deductions. Plaintiffs assert that as a matter of law, the authorizations are invalid. Thus, the fact that Phelps and Lugauer both testified that they authorized the deductions does not make Phelps and Lugauer atypical for purposes of the O.R.S. 652.610 claim.

Plaintiffs satisfy the typicality element.

### D. Adequacy

Rule 23(a)(4) requires the class representative(s) to fairly and adequately protect the interests of the class. This factor requires: (1) that the proposed representative plaintiffs have no conflicts of interest with the proposed class; and (2) that plaintiffs are represented by qualified and competent counsel. *See Hanlon,* 150 F.3d at 1020; *see also Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978) (describing two criteria for determining adequacy of representation: "[f]irst, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class.").

Plaintiffs argue that their interests are the same as the class as a whole. Both worked as contract drivers for defendant and were classified as independent contractors, as were all other potential class members. Both have willingly sat for depositions and have each already demonstrated that they will work to benefit the class through pursuit of their own goals.

Plaintiffs state that they have retained competent attorneys with extensive experience in the prosecution of class actions similar to those brought here. Kolbe Declr. at ¶ 3; Exh. 71 to Kolbe Declr.; Rees Declr. at ¶¶ 2–4.

Defendant does not challenge the evidence of adequacy other than to argue that plaintiffs, as former employees, cannot represent the class on the injunctive or declaratory relief claims. But, because plaintiffs do not seek certification of those claims at this time, their ability to adequately represent the class on those claims is not at issue. Plaintiffs have met their burden under Rule 23(a)(4)'s adequacy requirement.

### III. Rule 23(b)

If all of the Rule 23(a) criteria are met, plaintiffs still must establish that they meet the requirements of Rule 23(b)(1), (2), or (3). Here, as noted above, plaintiffs rely on Rule 23(b)(3) which provides that

[a] class action may be maintained if Rule 23(a) is satisfied and if:

* * *

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b).

■■■ "A Rule 23(b)(3) class is appropriate when a class action is superior to other available methods for adjudication of the controversy and common questions predominate over the individual ones." *Molski v. Gleich,* 318 F.3d 937, 947 n. 10 (9th Cir.2003) (internal quotation omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

> Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

*Hanlon,* 150 F.3d at 1022 (internal quotation omitted).

■■■ Plaintiffs need not establish that there are no individual issues, only that the class issues predominate and that a class action is superior. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir.2001) (concluding that "given the number and importance of the common issues," some variation among the individual employees in proving damages, as well as some potential difficulty in proof in demonstrating that they would have worked on a holiday, was not "enough to defeat predominance under Rule 23(b)(3)."); *see also Kamar v. Radio Shack Corp.,* 254 F.R.D. 387, 399 (C.D.Cal.2008) ("the existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof.... Individual issues do not render class certification inappropriate so long as such issues may

effectively be managed") (internal quotation omitted).

As defendant notes, the issue of whether defendant's drivers were independent contractors or employees is not, by itself, a claim. It is an element of each of plaintiffs' claims, but the issue is not alone determinative of any one claim. As a result, defendant argues that each claim requires the resolution of issues individual to each putative class member and thus, the individual issues in the case predominate over the common issue of driver status. I address defendant's argument by looking at what is required to prove each claim in this case.

**A. Fraud Claim**

■■ To state a fraud claim under Oregon law, plaintiffs must plead and prove:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the defendant's knowledge of its falsity or ignorance of its truth; (5) the defendant's intent that the representation should be acted on by the plaintiff ...; (6) the plaintiff's ignorance of its falsity; (7) the plaintiff's reliance on its truth; (8) the plaintiff's right to rely on the representation; (9) and the plaintiff's resulting injury.

*Smallwood v. Fisk,* 146 Or.App. 695, 699, 934 P.2d 557, 559 (1997).

■■ The fraud claim as alleged by plaintiffs is set out at the beginning of this Opinion. It is clear that the claim is based on the alleged misrepresentations and/or omissions in the various form contracts defendant drafted and which each putative class member signed. I agree with plaintiffs that there is no dispute that each class member thus received and acknowledged defendant's alleged misrepresentations regarding their employment status. *See In re Fedex Ground Package Sys., Inc. Employment Practices Litig.,* 2008 WL 5263376, at *4 (N.D.Ind. Dec. 16, 2008) ("the Minnesota plaintiffs present evidence that FedEx required all of its drivers to sign a standard operating agreement acknowledging their employment status as independent contractors. Therefore, ... there is no question as to whether each class member received FedEx's representations").

Given that the fraud claim is based on the form contracts, there is common evidence on several claims elements: the making of a representation (or the omission of information), its falsity, the defendant's knowledge of its falsity or ignorance of its truth, and the defendant's intent that the representation should be acted on by the plaintiff.

Several of the other elements may be appropriately understood as "reasonable reliance": materiality of the representations or omissions, the plaintiff's ignorance of the falsity, the plaintiff's reliance on the truth, and the plaintiff's right to rely on the representation. These elements are all different aspects of whether any reliance by plaintiffs was reasonable. I agree with defendant that this reasonable reliance issue may be unique to each individual plaintiff.[2] Each individual's damages will also be an individual assessment. I acknowledge the cases cited by defendant which suggest that because of the reliance issue, fraud claims may not be disposed to class treatment. *E.g., In re Hotel Tel. Charges*, 500 F.2d 86, 89 (9th Cir.1974) (refusing to certify a class for a state fraud claim because of individual issues as to, *inter alia*, individual reliance on any alleged misrepresentation); *Steiner*, 1991 WL 57033, at *4 (denying class certification on state law negligent misrepresentation claim because of the concern that individual questions of reliance precluded a finding of commonality).

However, the Ninth Circuit has also affirmed class certification of a fraud claim "stemming from a common course of conduct." *In re First Alliance Mtg. Co.*, 471 F.3d 977, 990 (9th Cir.2006). The court first quoted from the Advisory Committee notes to Rule 23:

The Advisory Committee on Rule 23 considered the function of the class action mechanism in the context of a fraud case and explained that while a case may be unsuited for class treatment "if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed," a "fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action . . . ."

*Id.* (quoting Fed.R.Civ.P. 23, Advisory Committee Notes to 1966 Amendments, Subdivision (b)(3)).

Next, the court explained that

[c]lass treatment has been permitted in fraud cases where, as in this case, a standardized sales pitch is employed. In *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation*, 140 F.R.D. 425 (D.Ariz.1992), the court correctly rejected a "talismanic rule that a class action may not be maintained where a fraud is consummated principally through oral misrepresentations, unless those representations are all but identical," observing that such a strict standard overlooks the design and intent of Rule 23. *Id.* at 430. Lincoln Savings involved a scheme that included, among other things, the sale of debentures to individual investors who relied on oral representations of bond salespersons who in turn had received from defendants fraudulent information about the value of the bonds. The Lincoln Savings court focused on the evidence of a "centrally orchestrated strategy" in finding that the "center of gravity of the fraud transcends the specific details of oral communications." *Id.* at 430–31. As the court explained:

[T]he gravamen of the alleged fraud is not limited to the specific misrepresenta-

---

**2.** However, because of the nature of this particular fraud claim, the differences in the reasonableness of each class member's reliance may be very slight. Given that Lugauer and Phelps each admitted that they knew they were signing contracts which labeled them as independent contractors, I suspect other class members also were aware of the designation when they signed the contracts. The fraud here is not grounded in a misrepresentation of fact in the sense that drivers were, say, classified by the contracts as employees, but then treated as independent contractors.

Rather, the alleged fraud is a misrepresentation as to the law in the sense that they were told they were independent contractors and they believed the express words of the contracts in that regard, but they argue that the facts regarding control show they were actually employees. I have previously concluded that a similar claim which alleged that the defendant falsely and knowingly misrepresented the legal status of the plaintiffs' employment classification, stated a claim under Oregon law. *Travis v. Knappenberger*, 204 F.R.D. 652, 660 (D.Or.2001).

tions made to bond purchasers.... The exact wording of the oral misrepresentations, therefore, is not the predominant issue. It is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again.

*Id.* at 431; *see also Schaefer v. Overland Express Family of Funds,* 169 F.R.D. 124, 129 (S.D.Cal.1996) (citing Lincoln Savings for the proposition that representations made to brokers or salesmen which are intended to be communicated to investors are sufficient to warrant class standing, even where the actual representations to individuals varied). The Borrowers' allegations of First Alliance's fraud fit comfortably within the standard for class treatment.

*Id.* at 991.

In this case, because the fraud claim is based on alleged misrepresentations and concealment of material facts in the boilerplate form contracts drafted by defendant and which were uniformly used with each driver, the common questions predominate over any individual questions related to reasonable reliance and damages.

### B. Statutory Wage Claims

Defendant argues that the statutory wage claims cannot be resolved on a class basis. Specifically, defendant argues that the O.R.S. 652.610 claim requires that each plaintiff demonstrate that the plaintiff did not expressly and freely consent to the deductions and that the deductions were not for the benefit of the plaintiff.

■ Under the statute, an employer may not make deductions from an employee's wages unless one of six conditions is met. O.R.S. 652.610(3). Thus, initially, plaintiffs must show that they were employees, that the amounts they were paid were wages, and that there were deductions made. The evidence on these issues is common evidence because of defendant's uniform treatment of all drivers in regard to classification, payments made, and deductions made. If plain-

tiffs prevail on these issues, then deductions may not be made unless one of the six exceptions to liability is established.

Defendant relies on the liability exception in O.R.S. 652.610(3)(b) which allows an employer to make deductions from an employee's wages when "[t]he deductions are authorized in writing by the employee, are for the employee's benefit, and are recorded in the employer's books."

Plaintiffs argue that common evidence is relevant to this exception. Rather than an individualized inquiry into whether each employee signed an agreement with defendant authorizing the deductions, plaintiffs contend that the relevant question will be a legal one: whether someone who has been determined to be an employee can ever authorize deductions of the employer's business expenses within the meaning of O.R.S. 652.610 pursuant to an agreement in which the worker is labeled an independent contractor. As plaintiffs state, "[i]n other words, it is a common legal question as to whether a worker can validly authorize a deduction from his or her wages pursuant to a contract that labels her as an independent contractor (who ostensibly would not have rights under ORS 652.610 to waive)." Pltfs' Reply Mem. at p. 22.

I agree with plaintiffs. The claim as framed by plaintiffs does not require an individualized inquiry into each putative class member's authorization of the deductions. Because of the uniform practice of defendant in regard to signed agreements characterizing the drivers as independent contractors and defendant's uniform practice of deducting certain sums from the monies earned by the drivers, the legality of the authorization will be a classwide question.

Additionally, proof of the other elements of the exception in subsection (3)(b), if necessary, will also rely on common evidence. The issue of whether the deductions were for the drivers' benefit or were instead deducted for the purpose of shifting to the employees defendant's ordinary business expenses, including the cost of paying its workers' compensation premiums, will be decided for the class. And, given that defendant's method of recording deductions on the drivers' "settlement statements" appears to be uniform, the

evidence regarding the recording of deductions in the employer's books, will also be uniform and not individualized.

While the exact amounts deducted will likely vary from driver to driver, the common issues related to the O.R.S. 652.610 claim prevail over the individual ones. Additionally, the calculation of the amounts deducted for each individual driver, if necessary, will likely be fairly mechanical.

As for the O.R.S. 652.150 penalty wage claim, the claim requires proof that (1) the employee's employment was terminated, (2) the employee was not paid wages within the prescribed period of time after the termination, and (3) the employer's failure to timely pay the wages was willful. O.R.S. 652.150; *see also* O.R.S. 652.140 (establishing requirements regarding payment of wages upon termination).

This claim is predicated on the illegal deduction claim under O.R.S. 652.610. That is, any "wages" that defendant owed a driver upon termination under O.R.S. 652.150 would be solely because defendant had improperly made deductions from the driver's pay while the driver worked for defendant. Defendant argues that individualized evidence is necessary on this claim to prove, as for each driver, that (1) the employment was terminated, (2) defendant willfully failed to pay, (3) within one business day, (4) wages that were earned and unpaid at the time of termination.

■ I agree with plaintiff that the claim will be proved with largely common evidence. The subclass proposed by plaintiffs is defined as drivers whose employment with defendant was terminated. Thus, other than showing that members of the subclass were employees and not independent contractors, an issue decided on common evidence as discussed above, no separate, additional evidence regarding termination is required. And, given that any late payment of wages depends on plaintiffs prevailing on the O.R.S. 652.610 claim, the element of the claim regarding wages being earned and unpaid will have already been determined, based on common evidence, with no additional evidence necessary. The willfulness of defendant also appears to be a subclass-wide determination based on common evidence.

While the damages inquiry will be individualized, this will likely be a fairly straightforward computation once liability is established and the amount of deductions calculated. Overall, the common issues on the O.R.S. 652.150 claim predominate over the individual issues.

C. Rescission/Unjust Enrichment Claims

The contours of these claims are a bit unclear. As described in the beginning of this Opinion, plaintiffs bring a claim for rescission based on their theory that the driver agreements are void as against public policy and thus unenforceable.

They also bring a separate claim for unjust enrichment/quantum meruit based on the theory that with the alleged misclassification of the drivers as independent contractors, defendant improperly required the drivers to pay defendant's ordinary business expenses (meaning, the sums defendant was allegedly not authorized to deduct from the monies it paid to the drivers). As a result, plaintiffs contend they are entitled to restitution of all the business expenses they were required by defendant to bear, and for the fair value of the services they provided.

■ On the unjust enrichment/quantum meruit claim, plaintiffs have to show (1) a benefit conferred by the plaintiffs; (2) awareness by the recipient that a benefit has been received; and (3) under the circumstances it would be unjust to allow retention of the benefit without requiring the recipient to pay for it. *Summer Oaks Ltd. P'ship v. McGinley*, 183 Or.App. 645, 654, 55 P.3d 1100, 1104 (2002) (unjust enrichment); *see also L.H. Morris Elec., Inc. v. Hyundai Semiconductor Am., Inc.*, 203 Or.App. 54, 66, 125 P.3d 1, 8 (2005) ("Quantum meruit is a form of restitution where the plaintiff has performed services for defendant and seeks to recover their fair value. The law, in appropriate situations, will imply a quasi-contract. It is not consensual. It is not a contract. It is a remedial device which the law affords to accomplish justice and prevent unjust enrichment.") (internal quotation omitted).

■ Because the claim is apparently based on the alleged inappropriateness of the deductions from earnings uniformly taken by defendant as to each of its drivers, common evidence will be used to prove whether the act of taking those deductions conferred a benefit on defendant by the drivers, whether defendant was aware that it received a benefit, and whether under the circumstances, defendant should retain the benefit without paying the drivers for that benefit.

■ A quasi-contract claim such as this, however, will not lie if an express contract covering the same situation exists between the parties. *Glacier Optical, Inc. v. Optique Du Monde, Ltd.*, No. CV91–985–FR, 1992 WL 176149, at *6 (D.Or. July 10, 1992); *see also Ken Hood Constr. v. Pacific Coast Constr., Inc.*, 201 Or.App. 568, 580 n. 7, 120 P.3d 6, 13 n. 7 (2005) (concluding that the parties had a contract and thus, not addressing quantum meruit claim because quantum meruit and breach of contract were mutually exclusive theories). Thus, plaintiffs cannot prevail on the unjust enrichment/quantum meruit claim without providing a basis for concluding that the driver contracts, or perhaps portions of those contracts, are inapplicable for some reason. In the briefing, plaintiffs make various suggestions that the driver contracts are unenforceable as contracts of adhesion, that they are unenforceable because they are void as violating public policy, or that they are simply inapplicable upon a determination that plaintiffs were employees and not independent contractors.

Regardless of the theory plaintiffs rely on, the evidence will be common because of defendant's uniform treatment of its drivers. All of the driver service contracts will be adjudged in the same fashion on this issue. Thus, common issues predominate in the unjust enrichment/quantum meruit claim.

■ The rescission claim is somewhat perplexing. The goal of rescission is to restore the parties to the status quo ante. *State v. Pettit*, 73 Or.App. 510, 513, 698 P.2d 1049, 1051 (1985); *see also White v. Burt*, 114 Or.App. 476, 479, 835 P.2d 946, 948 (1992) (permissibility of rescission generally depends on the restoration of the status quo ante).

During oral argument on the motion, I queried plaintiffs' counsel about the outcome of plaintiffs' rescission claim. I asked plaintiffs' counsel what a return to the status quo means in this case. Plaintiffs' counsel responded that rescinding the contract and returning to the status quo would require examining the work the drivers did for defendant and the amounts defendant paid them, then determining the fair market value of the services that were provided, and then computing the difference.

■ I am not convinced that rescinding the contract will place plaintiffs in the position of obtaining a payment of money from defendant based on a theory that as employees they are now owed something that they did not receive as independent contractors. But, whether plaintiffs persist in this approach as described in oral argument, or instead, pursue the severance of a portion of the contract that they contend is illegal, it is of little importance to the instant motion. In either case, the evidence in support of rescission will be common evidence because it involves defendant's characterization of the drivers as independent contractors rather than employees. Any differences among the putative class members is likely to be immaterial.

Finally, as to the superiority of maintaining the case as a class action over individual claims, I agree with plaintiffs that a class action is superior given the increased expenses, duplication of discovery, and potential for individual actions should each driver have to pursue his or her claims individually. The efficiencies gained by use of a class action for all common questions outweigh any burden created by adjudication of each driver's damages. Overall, all parties will benefit by reducing litigation expenses. And, as is typical of class actions, class certification will protect the rights of class members, most of whom would otherwise be precluded from pursuing claims for relatively small awards. Additionally, as plaintiffs note, the class in this case is a well-defined group of individuals. Defendant also possesses contact information for the class members. The size of

the class is relatively small. A class action is warranted in this case.

## CONCLUSION

Plaintiffs' motion for class certification (# 81) is granted. IT IS SO ORDERED.